**Opinion filed December 31, 2019**



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00361-CR

_____

## TRACY RAY CONN, III, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**
**Brown County, Texas**
**Trial Court Cause No. CR24759**

### M E M O R A N D U M   O P I N I O N

The jury convicted Tracy Ray Conn, III, of possession with intent to deliver four grams or more but less than 200 grams of methamphetamine, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2017). Appellant pleaded "true" to three prior felony convictions alleged by the State for enhancement purposes. The jury assessed Appellant's punishment at confinement for a term of ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice. In two issues, Appellant challenges the trial court's denial of

his motion to suppress evidence obtained during a search that followed a canine sniff of his vehicle. We affirm.

*Background Facts*

Carlyle Gover is a narcotics investigator with the Brown County Sheriff's Office. On April 27, 2016, a fellow narcotics investigator, Robert Ramirez, advised Investigator Gover that Investigator Ramirez had received a tip about possible drug activity. Investigator Ramirez was unable to follow up on the tip, so he relayed the information to Investigator Gover. Investigator Ramirez, however, did not disclose the identity of the informant or any information about the informant's reliability. Thus, we will presume the tip was anonymous, as the trial court did.

According to the informant, a white male, a Hispanic male, and Mandy Hardin would be transporting a large quantity of methamphetamine in a blue 2008 Chrysler 300. The informant also provided the license plate number for the Chrysler. Investigator Gover knew that Hardin was associated with narcotics. The informant said that Hardin and the two men would leave a house together in the Chrysler. Investigator Gover knew that the residents at that address used narcotics.

Based on the tip, Investigator Gover drove to the house to conduct surveillance. Investigator Gover saw a blue Chrysler 300 with the same license plate number provided by the informant. Investigator Gover observed Hardin, a white male, and a Hispanic male loading items into the Chrysler. At some point, all three individuals left in the Chrysler, and Investigator Gover followed them. Hardin was driving, and she rolled through a stop sign. Investigator Gover initiated a traffic stop. *See* TEX. TRANSP. CODE ANN. § 544.010(c) (West 2011) (requiring a vehicle operator to stop at a stop sign). Investigator Gover testified that Hardin "drove a little [farther] than is typical" but that she eventually stopped.

Investigator Gover approached the Chrysler and told Hardin why he had stopped her. Investigator Gover questioned Hardin about "where she was going,

2

what she was doing, [and] who was in the car with her." Investigator Gover identified the white male as Appellant and the Hispanic male as Homero Retana. Hardin said that the Chrysler belonged to Appellant. Investigator Gover suspected Hardin was high on methamphetamine because she was "manic," "talking fast," and running her thoughts together. Hardin's answers regarding their destination were inconsistent because, although they were supposedly traveling to the Dallas–Fort Worth Metroplex, they were going the wrong direction. After speaking with Hardin, Investigator Gover checked all three individuals' driver's licenses, checked for warrants, and inspected the vehicle's registration and insurance. Investigator Gover also requested Appellant's consent to search the vehicle, to which Appellant responded: "You need a search warrant." Investigator Gover thought this response was "very odd."

After being denied consent to search, Investigator Gover tried unsuccessfully to contact a canine unit in the area. Investigator Gover thought that he had reasonable suspicion that methamphetamine was in the vehicle, but not probable cause. Investigator Gover testified that the detention would have been unreasonably long had he waited for a canine unit to arrive, so he gave Hardin a verbal warning and terminated the detention.

Afterward, Investigator Gover decided to patrol a nearby, high-crime neighborhood. Five to ten minutes after the first stop ended, Investigator Gover saw Appellant's Chrysler "parked on Brin Street in front of Geraldo Salazar's house." Investigator Gover knew Salazar's home to be associated with narcotics. Investigator Gover's suspicion was heightened by encountering the Chrysler in a high-crime area known for drug activity. Finding the Chrysler there also increased Investigator Gover's suspicion because it conflicted with where Hardin had said she was going.

The Chrysler was blocking Salazar's driveway, which is a traffic violation. *See* TRANSP. § 545.302(b)(1) (prohibiting parking in front of a private driveway). At the same time Investigator Gover spotted the Chrysler, a canine unit became available. Investigator Gover believed that he still had a reasonable suspicion that the Chrysler contained methamphetamine based on the first stop, so he decided to initiate a second traffic stop and wait for the canine unit to arrive. Investigator Gover pulled behind the Chrysler and initiated his emergency lights. Within seconds, Appellant and Retana got out of the Chrysler and walked toward where Hardin was talking to Salazar. Investigator Gover testified that, based on his experience as a narcotics investigator, suspects will try to distance themselves from a vehicle when they know contraband is inside of it.

Investigator Gover approached Hardin and informed her that it was a traffic violation to park in front of a private driveway. Investigator Gover testified that he follows the same procedure when he stops a car for a nonmoving violation as he does for a moving violation. But having just performed the normal traffic stop procedures, he did not do so again during the second stop with respect to checking for valid license, registration, and proof of insurance. After informing Hardin of her traffic violation, Investigator Gover told her that a canine unit was on the way.

Captain James Stroope of the Brown County Sheriff's Office arrived about ten minutes later with his canine, Buster. During an open-air sniff, Buster alerted on the Chrysler. Investigator Gover and Captain Stroope then searched the Chrysler. The initial search yielded a bag of methamphetamine and drug paraphernalia. A more thorough search at the station revealed another bag of methamphetamine attached under the front passenger's seat by a magnet.

Before trial, Appellant moved to suppress the evidence obtained as a result of the search. At the hearing on Appellant's motion to suppress, Appellant argued that Investigator Gover lacked reasonable suspicion to prolong the second stop. The

4

State countered that, based on Investigator Gover's observations and the anonymous tip, Investigator Gover had reasonable suspicion to briefly prolong the second stop until the canine unit arrived. The trial court denied Appellant's motion to suppress.

*Analysis*

In his first issue, Appellant argues that the trial court erred when it denied his motion to suppress because Investigator Gover lacked reasonable suspicion to prolong Appellant's detention after completing the second stop's mission of informing Hardin that she was illegally parked. Appellant contends that Investigator Gover lacked reasonable suspicion because (1) the anonymous tip did not provide sufficient details of criminal activity to establish reasonable suspicion, (2) Investigator Gover learned nothing during the first stop to "[c]onfirm [Investigator] Gover's [h]unch . . . that the vehicle allegedly contained a large amount of methamphetamine," and (3) the second stop "provided no basis for reasonable suspicion that criminal activity was afoot."

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez*, 348 S.W.3d at 922–23. We afford almost total deference to the trial court's determination of historical facts, and of mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 922–23. We review de novo the trial court's determination of pure questions of law, and mixed questions of law and fact that do not depend on credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Martinez*, 348 S.W.3d at 923.

When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial

5

court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). At a suppression hearing, the trial court is the sole judge of the credibility of the witnesses and is free to believe or disbelieve any or all of the evidence presented. *See id.* at 24–25. "If supported by the record, a trial court's ruling on a motion to suppress will not be overturned." *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

> "There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause."

*Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). This case concerns the second category—an investigative detention. *See id.*

"The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arizu*, 534 U.S. 266, 273 (2002)). In such cases, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *Arizu*, 534 U.S. at 273); *see Terry v. Ohio*, 392 U.S. 1, 9 (1968). A seizure justified only by a traffic violation becomes unlawful if prolonged beyond the time reasonably required to conduct the traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015); *Ramirez-Tamayo*, 537 S.W.3d at 36. Thus, continuing a brief investigatory detention beyond the time necessary to conduct a traffic stop

6

requires reasonable suspicion of criminal activity apart from the traffic violation. *Ramirez-Tamayo*, 537 S.W.3d at 36; *see Rodriguez*, 575 U.S. at 357–58.

Reasonable suspicion for a detention exists when a police officer "has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Wade*, 422 S.W.3d at 668. This is an objective standard that disregards the officer's actual subjective intent and looks instead to whether there was an objectively justifiable basis for the detention. *Id.* "When assessing the existence of reasonable suspicion, a reviewing court must look to the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." *Ramirez-Tamayo*, 537 S.W.3d at 36. Although the circumstances may seem innocent in isolation, an investigatory detention is justified if the circumstances combine to reasonably suggest imminent criminal conduct. *Id.* The lesser standard of reasonable suspicion is satisfied if "the information is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that something of an apparently criminal nature is brewing." *Id.* (quoting *Wade*, 422 S.W.3d at 668). A reasonable suspicion determination "need not rule out the possibility of innocent conduct." *Id.* (quoting *Leming v. State*, 493 S.W.3d 552, 565 (Tex. Crim. App. 2016)).

Appellant argues that Investigator Gover lacked reasonable suspicion to prolong Appellant's detention during the second traffic stop after he verbally warned her about the parking violation that he observed. In this regard, Investigator Gover testified that the normal traffic-stop tasks were unnecessary during the second stop because he had just performed them minutes before at the first stop. Appellant contends that "[t]here was absolutely no information on which [Investigator] Gover

7

relied[] that would lead any reasonable officer to believe the vehicle contained a large amount of methamphetamine."

We note at the outset that the Texas Court of Criminal Appeals has cautioned against using a divide-and-conquer approach by viewing the relevant events in insolation. *Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2016). Instead, we are to consider the cumulative force of all of the circumstances. *Id.* (citing *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015)).

Appellant first argues that the anonymous tip was not adequately corroborated because Investigator Gover merely corroborated details that were easily ascertainable when the tip was made. "An anonymous tip alone is seldom sufficient to establish reasonable suspicion." *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). To provide reasonable suspicion, an anonymous tip needs some indicia that the informant is "credible or that his information is reliable." *Id.* One way an officer can evaluate an anonymous tip is through corroboration of "enough facts to reasonably conclude that the information given to him is reliable." *Brother v. State*, 166 S.W.3d 255, 259 n.5 (Tex. Crim. App. 2005) (citing *Albama v. White*, 496 U.S. 325, 330–31 (1990)). Corroboration does not require that the officer personally observe the illegal conduct described by the tip. *Id.*

The tip here alleged that a specific vehicle would leave a specific address with a large quantity of methamphetamine. The tip thoroughly described the vehicle, including the year, make, model, color, and license plate number. Investigator Gover visually confirmed that the specific vehicle was at the location provided by the informant. The tip identified Hardin by name and accurately described Appellant and Retana by their race and gender. Investigator Gover recognized Hardin and visually confirmed the physical descriptions of Appellant and Retana.

8

Furthermore, the tip accurately predicted future conduct of its subjects. As Appellant points out, a tip that provides "[a]n accurate description of a subject's readily observable location and appearance" "does not show that the tipster has knowledge of concealed criminal activity." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). But a tip that predicts future behavior is more reliable because it demonstrates "a special familiarity with [a person's] affairs." *White*, 496 U.S. at 332. In *White*, the Court concluded that an anonymous tip, after being corroborated by the officer's observations, exhibited sufficient indicia of reliability to establish reasonable suspicion because it accurately predicted "that respondent would shortly leave the building, get in the described car, and drive the most direct route to [a specific location]." *Id.* Here, the tip correctly predicted that three individuals would be traveling in the Chrysler and that they would leave 2700 Avenue B together. We need not determine whether the tip was sufficiently reliable alone to support reasonable suspicion, however, because Appellant's detention during the second stop was not based solely on the tip.

In addition to the tip, Investigator Gover possessed other information by the time Appellant was detained during the second stop. Investigator Gover knew the address the tipster provided to be associated with narcotics, and he knew that Hardin was involved with narcotics distribution. When Investigator Gover initiated the first traffic stop, Hardin took longer than usual to pull over. Based upon his observation of Hardin during the first stop, Investigator Gover believed that Hardin was under the influence of methamphetamine. *See Furr*, 499 S.W.3d at 880 (officer's observation that suspect appeared to be under the influence of drugs is a factor supporting reasonable suspicion). During the first stop, Appellant refused Investigator Gover's request to search the Chrysler by stating that Investigator Gover "need[ed] a search warrant," a comment that Investigator Gover believed to be "very odd." While a citizen's refusal to consent to a search cannot be the "prominent

9

factor" in a determination of reasonable suspicion, it can be a factor in the determination when combined with additional suspicious factors. *Wade*, 422 S.W.3d at 674–75; *see Matthews*, 431 S.W.3d at 605 n.33.

The second encounter occurred in a high-crime area—known for drug offenses—in front of a house that Investigator Gover knew to be associated with narcotics. *See Furr*, 499 S.W.3d at 880 (suspect's presence in area known by police "to be a 'high drug, high crime' area" supports a determination of reasonable suspicion). This location was inconsistent with where Hardin had claimed they were traveling. Furthermore, Appellant and Retana exited the Chrysler when Investigator Gover pulled behind them. Investigator Gover testified that exiting a vehicle in this situation can indicate that a suspect is trying to distance himself from contraband that he knows is inside of the vehicle.

Viewed individually, these facts might not justify an investigatory detention. Viewed collectively, however, the circumstances provided reasonable suspicion justifying the ten-minute wait for the canine unit to arrive. *See id.* We overrule Appellant's first issue.

In his second issue, Appellant argues that, even if we find "[Investigator] Gover did not unreasonably prolong the detention, then surely when Appellant demanded a search warrant, [Investigator] Gover should have forthwith: [1] concluded his traffic stop, [2] released the vehicle and its occupants, and [3] presented a magistrate an affidavit in support of his request for a search warrant." Thus, Appellant is asserting that a citizen has a unilateral right to terminate an investigative detention that is supported by reasonable suspicion simply by requesting a search warrant. Appellant has not cited any authority in support of this proposition, and we have found none. Conversely, our jurisprudence recognizes that warrantless searches are permitted when they are objectively reasonable under the Fourth Amendment based upon recognized exceptions. *See Kentucky v. King*, 563

U.S. 452, 459 (2011). Absent guidance from the United States Supreme Court or the Texas Court of Criminal Appeals, we decline to adopt a per se rule that police officers must cease an investigation anytime a suspect demands a warrant. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


December 31, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[1]

Willson, J., not participating.

---

[1]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.