**Opinion filed May 6, 2021**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-19-00191-CR

_____

## JAMES VINCENT YODA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 441st District Court**
**Midland County, Texas**
**Trial Court Cause No. CR49779**

## O P I N I O N

The jury convicted Appellant, James Vincent Yoda, of the offense of felony driving while intoxicated as enhanced by two prior misdemeanor DWI convictions: one from 2000 and the other from 2016. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2) (West Supp. 2020). The State alleged two prior felony convictions for enhancement purposes. Appellant pleaded "true" to the prior felony convictions,

and the trial court found both to be "true." The trial court assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of thirty-five years.

Appellant brings two issues on appeal. First, Appellant asserts that the trial court erred in denying his motion to suppress due to the challenged validity of the initial stop for speeding. Second, Appellant argues that the trial court abused its discretion in denying his request for a jury instruction, pursuant to Article 38.23 of the Texas Code of Criminal Procedure, to disregard evidence presented if the jury had a reasonable doubt as to whether the evidence was obtained illegally or in violation of Appellant's constitutional rights. We affirm.

*Background Facts*

Around 2:15 a.m. on March 25, 2017, Deputy Blake Gibson of the Midland County Sheriff's Office saw Appellant cross in front of him on Front Street at a high rate of speed. Deputy Gibson stated that he was stationary, approximately ten feet from the intersection, when Appellant crossed in front of him. Deputy Gibson testified that "it took me a while to catch up" and that he had to accelerate to approximately 73 miles per hour to catch up to Appellant. The speed limit on Front Street in that area was 45 miles per hour. Deputy Gibson believed that Appellant was traveling approximately 60 to 70 miles per hour or at "highway speeds." Deputy Gibson testified that he was able to catch up to Appellant once Appellant slowed down, possibly due to seeing the patrol car approaching from behind. Appellant slowed to approximately 30 miles per hour until he was signaled to stop by Deputy Gibson.

Deputy Gibson testified that, from his own personal driving experiences, he estimated that Appellant was speeding. Deputy Gibson stated that he lacked the

2

appropriate certification to activate and use radar to determine a vehicle's speed. Deputy Gibson testified that he had no scientific method for gauging Appellant's speed, and he admitted that he was not authorized to issue speeding tickets because a speeding ticket calls for an exact speed determination. Deputy Gibson also admitted that he had not received any specialized training on how to tell if a vehicle was speeding from a side vantage perspective. However, Deputy Gibson based his assessment on his own "experience driving [and knowing] that [Appellant was traveling] well over the posted speed limit" of 45 miles per hour, as well as knowing what a car traveling at 60 or 70 miles per hour would look like.

After pulling Appellant over, Deputy Gibson approached Appellant's vehicle, smelled alcohol, and saw a bottle of malt liquor inside. Appellant showed signs of impairment, including slurred speech, and admitted drinking alcohol at a local bar. Deputy Gibson testified that Appellant had glassy, bloodshot eyes and slurred speech and that he struggled to remove his license from his wallet. Deputy Ethan McKinney, who was going through training with the Midland County Sheriff's Office, was called to the scene to conduct the remainder of the traffic stop.

Deputy McKinney conducted the DWI portion of the investigation. Appellant admitted to Deputy McKinney that he had been drinking and said that he just wanted to go home. Appellant, when prompted by Deputy McKinney, struggled to touch the tip of a pen. Deputy McKinney testified that Appellant showed signs of intoxication while performing the horizontal gaze nystagmus test. Appellant also showed signs of intoxication during the "walk-and-turn" test and the one-leg stand test. After receiving the proper statutory warnings, Appellant refused to give a breath sample. A warrant was obtained to draw Appellant's blood.

Nick Pierce, a forensic toxicologist with the Texas Department of Public Safety Crime Laboratory, testified that Appellant's blood-alcohol level came back at 0.204, two and one-half times the legal limit. According to Pierce, this amount of alcohol would affect a person's mental faculties regardless of that person's experience with alcohol.

After the State rested, Appellant requested a jury instruction pursuant to Article 38.23. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2018). The trial court denied Appellant's request, and the jury returned a verdict of guilty.

*Issue One*

In his first issue, Appellant argues that the trial court erred when it denied his motion to suppress because Deputy Gibson lacked reasonable suspicion to conduct a traffic stop on Appellant's vehicle. Specifically, Appellant asserts that, "[a]s Appellant was detained solely based upon an officer's lay opinion conclusory statement [that] Appellant was exceeding the speed limit, Appellant's detention was unlawful." Thus, Appellant asserts that Deputy Gibson should not have conducted an investigative detention for any criminal act which he claims to have observed but about which he could do nothing. Therefore, it is Appellant's argument that any evidence against him, obtained as a result of the traffic stop, was unlawfully obtained. We disagree.

*A. Standard of Review*

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We afford almost total deference to the trial court's determination of historical facts, especially

4

when a trial court's fact findings are based on an evaluation of credibility and demeanor. *Brodnex*, 485 S.W.3d at 436; *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same deference is afforded the trial court with respect to its rulings that concern the application of the law to questions of fact and to mixed questions of law and fact if the resolution of those questions turns on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *see Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018). We review de novo whether the presented facts are sufficient to give rise to reasonable suspicion in a case. *Lerma*, 543 S.W.3d at 190.

When the record is silent as to the reasons for the trial court's ruling on a motion to suppress, as in the case before us, we review the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings to support its ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Weide v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim. App. 2000).

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). We will sustain the trial court's ruling on a motion to suppress if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

When, as here, the defense participates in the examination of witnesses at trial on issues pertinent to a pretrial motion to suppress or does not participate but also does not object to the subject matter of the testimony, the defendant has consensually relitigated the suppression issue. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996); *Hardesty v. State*, 667 S.W.2d 130, 133 n.6 (Tex. Crim. App. 1984); *Davis v. State*, 74 S.W.3d 90, 94 (Tex. App.—Waco 2002, no pet.). Therefore, the trial court's pretrial ruling is assessed in light of the evidence at both the pretrial hearing and trial. *Rachal*, 917 S.W.2d at 809.

*B. Analysis*

There are three different types of interactions between citizens and law enforcement officers: (1) consensual encounters; (2) investigatory detentions; and (3) arrests. *State v. Woodard*, 341 S.W.3d 404, 410–11 (Tex. Crim. App. 2011) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Terry v. Ohio*, 392 U.S. 1, 30–31 (1968); *Gerstein v. Pugh*, 420 U.S. 103, 111–12 (1975)). Consensual encounters do not implicate Fourth Amendment protections. *Id.* at 411. Police officers may stop and request information from a citizen with no justification. *Id.* A citizen may terminate such a consensual encounter at will. *Id.* A citizen's acquiescence to an officer's request does not transform a consensual encounter into a detention or seizure, even if the officer does not communicate to the citizen that the officer's request for information may be ignored. *Id.* If a police officer through force or a showing of authority restrains a citizen's liberty, the encounter is not consensual and has become either a detention or an arrest, requiring either reasonable suspicion or probable cause, respectively. *Id.*

"Under the Fourth Amendment, a warrantless detention of a person that amounts to less than a full-blown custodial arrest must be justified by a reasonable

suspicion." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011); *see also United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("[P]olice can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause."); *Brown v. Texas*, 443 U.S. 47, 51 (1979). "The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). In such cases, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *Arvizu*, 534 U.S. at 273); *see Terry v. Ohio*, 392 U.S. 1, 30 (1968). A seizure justified only by a traffic violation becomes unlawful if prolonged beyond the time reasonably required to conduct the traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015); *Ramirez-Tamayo*, 537 S.W.3d at 36. Thus, continuing a brief investigatory detention beyond the time necessary to conduct a traffic stop requires reasonable suspicion of criminal activity apart from the traffic violation. *Ramirez-Tamayo*, 537 S.W.3d at 36; *see Rodriguez*, 575 U.S. at 357–58.

Reasonable suspicion for a detention exists when a police officer "has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013). This is an objective standard that disregards the officer's actual subjective intent and looks instead to whether there was an objectively justifiable basis for the detention. *Id.* "When assessing the existence of reasonable

suspicion, a reviewing court must look to the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." *Ramirez-Tamayo*, 537 S.W.3d at 36. Although the circumstances may seem innocent in isolation, an investigatory detention is justified if the circumstances combine to reasonably suggest imminent criminal conduct. *Id.* The lesser standard of reasonable suspicion is satisfied if "the information is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that something of an apparently criminal nature is brewing." *Id.* (quoting *Wade*, 422 S.W.3d at 668). A reasonable suspicion determination "need not rule out the possibility of innocent conduct." *Id.* (quoting *Leming v. State*, 493 S.W.3d 552, 565 (Tex. Crim. App. 2016)).

To be clear, as relevant to our review, the question is whether the evidence the officer described allowed the trial court to reasonably resolve whether Deputy Gibson, based on facts and circumstances observed and described with some specificity, was able to form a reasonable suspicion to believe that Appellant was speeding. In his brief, Appellant suggests that an experienced police officer cannot form a reasonable opinion about the speed at which another vehicle is being driven based on visual observations alone. According to Appellant, the facts that Deputy Gibson described are insufficient to support the conclusion that Appellant was speeding. We disagree.

Experienced drivers may form and express a lay opinion about the speed of other vehicles they observe on a roadway based on the objective facts they describe, and depending on the facts the witness articulates, the facts described may be sufficient for a court to allow a lay witness to express a lay opinion about another vehicle's speed. *See* TEX. R. EVID. 701; *McMillan v. State*, 754 S.W.2d 422, 425

8

(Tex. App.—Eastland 1988, pet. ref'd) (stating that "[t]he opinions of lay witnesses, when competent, are admissible concerning estimates of age, size, quality, time, and estimates of distance and speed").

Appellant criticizes the trial court's decision to credit Deputy Gibson's opinion for numerous reasons. First, he suggests that Deputy Gibson did not measure Appellant's speed, either by radar or through "pacing." Second, Appellant argues that Deputy Gibson did not see Appellant pass any other vehicles who were traveling at the posted speed limit. Third, Appellant criticizes Deputy Gibson's lack of specialized training in estimating vehicle speeds by sight. Lastly, Appellant argues that Deputy Gibson had no scientific method for gauging Appellant's speed.

In our opinion, Appellant's arguments go to the weight the trial court chose to afford Deputy Gibson's testimony and to whether the trial court had the discretion to accept Deputy Gibson's testimony as sufficiently reliable to demonstrate that the officer formed a reasonable suspicion to believe that Appellant was driving his vehicle above the posted speed limit. While it is true that Deputy Gibson couched his opinion in miles per hour and described Appellant as traveling at "highway speeds" estimated at 60 to 70 miles per hour, the evidence allowed the trial court to view the opinion as an estimate and not a precise mathematical calculation of Appellant's speed. *See Phipps v. State*, No. 09-18-00473-CR, 2021 WL 262074, at *3 (Tex. App.—Beaumont Jan. 27, 2021, no pet.) (mem. op., not designated for publication). The other facts show that Deputy Gibson did not use a radar to gauge Appellant's speed and that Deputy Gibson did not apply any scientific formulas designed to determine another vehicle's speed. *See id.* The estimate that Deputy Gibson provided is one that he based on facts he described, all of which he personally observed as Appellant crossed in front of him on Front Street.

While the trial court, in exercising its discretion, might have chosen to not believe or credit Deputy Gibson's testimony, we must give the trial court's ruling almost complete deference given that the trial court had the right to decide whether Deputy Gibson was a credible witness. *See Garcia-Cantu*, 253 S.W.3d at 241. As the factfinder, the trial court had the right to resolve the discrepancies that Appellant pointed out and to decide whether the testimony should be given any weight. Where a posted speed limit on a city street is alleged to have been exceeded by only five miles per hour, as judged by only the naked eye of even the most trained traffic officer, the allegation might be suspect; however, a vehicle exceeding a 45-mile-per-hour speed limit in downtown Midland by twenty miles per hour or more, as is the case here, cannot be said to be outside the plausible range of experience or ability of the average driver to appreciate, even if the exact speed cannot be precisely ascertained. Both would be subject to cross-examination, and a factfinder would be entitled to weigh the credibility of that witness and testimony. Under the circumstances, we must reject Appellant's suggestion that Deputy Gibson had to determine Appellant's exact speed by using a radar or a scientific method rather than offering a lay opinion about his speed to form a reasonable suspicion to believe that Appellant was driving over the posted speed limit. *See Phipps*, 2021 WL 262074, at *3; *Icke v. State*, 36 S.W.3d 913, 915–16 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) (upholding trial court's ruling, which was supported by the arresting officer's testimony that his opinion about the defendant's speed was one formed based on the officer's experience and without using radar).

In his brief, Appellant relies on *Ford v. State*, 158 S.W.3d 488 (Tex. Crim. App. 2005), to bolster his argument that the record does not support the trial court's ruling on his motion to suppress. This case, however, is easily distinguishable. In

*Ford*, the Court of Criminal Appeals explained that, when a police officer expresses an opinion about whether another vehicle is following too closely, the record must contain more than the officer's bare opinion to support a ruling denying a motion to suppress. 158 S.W.3d at 494 ("The State failed to elicit any testimony pertinent to what facts would allow [the officer] to objectively determine Ford was violating a traffic law."). But unlike the record in this case, the officer's testimony in *Ford* failed to reveal the facts that the officer relied on when he formed the opinion that he expressed in the trial. *See id.* Identifying facts the officer used to form the opinion is necessary to the appellate record, as appellate courts require the record to show that the police officer articulated facts on which they relied to form the opinions that led them to reasonably believe that "a particular person actually is, has been, or soon will be engaged in criminal activity." *Id.* at 492. Deputy Gibson identified those facts in the hearing on Appellant's motion to suppress and during trial. The trial court, as the trier of fact, resolved doubts and conflicts, if any, that might have arisen in the suppression hearing.

Deputy Gibson testified that he saw Appellant driving at a speed that was neither reasonable nor prudent, stating: "I witnessed a small passenger car traveling west to east on Front, traveling at what appeared to be a high rate of speed." Deputy Gibson further supplied the trial court with testimony concerning the context from which he derived that opinion: "[I]t took me a while to catch up" and "I believe my top speed was 73 miles [per] hour in order to catch up." Deputy Gibson testified that he was only able to catch up to Appellant when Appellant applied his brakes. Deputy Gibson admitted that he was not certified to use the radar to determine Appellant's speed and that he could not "pace" Appellant's vehicle due to Deputy Gibson's initial position. He based his assessment on his own "experience driving

11

[and knowing] that [Appellant was traveling] well over the posted speed limit" of 45 miles per hour and knowing what it is to observe 60 or 70 miles per hour. Deputy Gibson testified that he was "very familiar with the way a vehicle appears when traveling highway speed . . . . And so [Deputy Gibson] felt that the vehicle was possibly traveling at a highway speed, which is well above the posted speed limit."

Appellant asserts that Deputy Gibson did not see a traffic violation occur, only made a conclusory opinion that Appellant was speeding, and did not have any objective way to determine that Appellant was violating the law. We disagree. Regardless of the numerical limit posted on a speed limit sign, it is a traffic offense for a vehicle operator to "drive at a speed greater than is reasonable and prudent under the circumstances then existing." TEX. TRANSP. CODE ANN. § 545.351(a) (West 2011). Poor weather, darkness, or other traffic conditions can legally require that drivers *lower* their speed below that which is posted to prudently address those less-than-optimal driving circumstances. *See id.* § 545.363. A posted speed limit is prima facie evidence that a speed *greater* than that posted is not reasonable and prudent and that the speed is unlawful. *Id.* § 545.352(a) (West Supp. 2020). As stated above and as seen in *Icke*, an officer's observation of a vehicle's speed, with or without the use of radar, can satisfy the basis for a reasonable suspicion to conduct a traffic stop. *Icke*, 36 S.W.3d at 916. While the evidence presented by Deputy Gibson may not have established beyond a reasonable doubt that Appellant was speeding, an officer does not need to meet that burden of proof to have reasonable suspicion to conduct a traffic stop. *Al-Hanna v. State*, No. 08-17-00037-CR, 2019 WL 156779, at *4 (Tex. App.—El Paso Jan. 10, 2019, no pet.) (not designated for publication) (citing *Ford*, 158 S.W.3d at 492 (an officer only needs a reasonable basis to conduct a traffic stop and is not required to prove the commission of a traffic

12

offense beyond a reasonable doubt)). Instead, these are specific and articulable facts that show that an objective officer could have reasonable suspicion that, under the totality of the circumstances, Appellant was speeding in the officer's presence.

Deferring to the trial court's resolution of historical facts, we conclude that the record supports a finding of reasonable suspicion. Thus, the trial court did not err in denying Appellant's motion to suppress. We, therefore, overrule Appellant's first issue on appeal.

*Issue Two*

In his second issue, Appellant argues that the trial court erred by denying his request to instruct the jury that it must disregard evidence if it had a reasonable doubt about whether Deputy Gibson stopped Appellant based on a reasonable suspicion of Appellant exceeding the speed limit. *See* CRIM. PROC. art. 38.23; Comm. on Pattern Jury Charges, State Bar of Texas, *Texas Criminal Pattern Jury Charges: General, Evidentiary & Ancillary Instructions* PJC 8.6 (2018) (Instruction—Exclusionary Rules—Evidence Obtained as Result of Traffic Stop for Speeding); *see also Madden v. State*, 242 S.W.3d 504, 508 n.5 (Tex. Crim. App. 2007).

*A. Standard of Review*

A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). We must first determine whether the charge contained any actual error. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32.

*B. Analysis*

Under Texas law, the Code of Criminal Procedure requires trial courts to exclude evidence in a trial if the State obtained the evidence by violating the law. CRIM. PROC. art. 38.23. But if the evidence shows that a fact issue exists about whether the police conduct was illegal, the trial court must submit an instruction to the jury that informs the jury that "if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, . . . [it must] disregard any such evidence so obtained." *Id.* art. 38.23(a).

There must be a genuine dispute about a material fact issue before an Article 38.23 instruction is warranted. *Madden*, 242 S.W.3d at 509–10. The defendant must demonstrate that (1) the evidence heard by the jury raises an issue of fact, (2) the evidence on that fact is affirmatively contested, and (3) the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the evidence. *Id.* at 510. If there is no disputed issue of material fact, the legality of the challenged conduct is a question of law for the trial court. *Id.* And if other undisputed facts are sufficient to establish the lawfulness of the conduct, the contested factual issue is not material, and the defendant is not entitled to a jury instruction on the fact issue. *See id.* at 510–11.

To raise a disputed fact issue, there must be some affirmative evidence that contradicts the existence of that fact. *Id.* at 513. This evidence can come "from any source," regardless of whether it is "strong, weak, contradicted, unimpeached, or unbelievable." *Garza v. State*, 126 S.W.3d 79, 85 (Tex. Crim. App. 2004) (quoting *Wilkerson v. State*, 933 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd)). A defendant's questions on cross-examination cannot, by themselves, raise

a disputed fact issue. *Madden*, 242 S.W.3d at 515. However, the witnesses' answers to those questions might raise a fact issue. *Id.* at 513.

Appellant asserts that Deputy Gibson's responses to cross-examination at trial gave rise to a genuine issue of fact. Appellant points to Deputy Gibson's testimony that, upon catching up to Appellant's vehicle, Appellant was only traveling at 33 miles per hour, well below the posted speed limit. Appellant also notes that Deputy Gibson never paced Appellant's vehicle or used radar to determine Appellant's speed. Deputy Gibson admitted that he had no objective way to determine whether Appellant was actually traveling over the speed limit but, rather, relied upon his past experiences as a police officer. Appellant also argues that Deputy Gibson's view was impeded by telephone poles and an electrical box at the intersection where Deputy Gibson claimed to have witnessed Appellant speeding. Based on this testimony, Appellant contends that a fact issue arose that was affirmatively contested, which should have been resolved by an Article 38.23 instruction. We disagree.

We examine the hypothetical presented in *Madden*, 242 S.W.3d at 511, to analyze Appellant's suggested fact issue. Appellant's asserted issue is whether a fact question was presented requiring an instruction per Article 38.23 based on Deputy Gibson's testimony that he could determine, by visual observation only, that Appellant exceeded the speed limit of 45 miles per hour, thereby giving the officer a reasonable suspicion to stop Appellant. The Court of Criminal Appeals addressed this argument in *Madden* and reasoned:

> If the jury finds that appellant did obey the speed limit and that Officer Lily was unreasonable in believing that he did not, then they may not consider the evidence obtained as a result of this unlawful detention. If, however, Officer Lily says that appellant did speed, and Witness

15

Two (or appellant) says that he doesn't remember or doesn't know, there is no disputed fact to submit because there is no affirmative evidence of a factual conflict. Similarly, if Officer Lily testifies that appellant did speed, but the cross-examiner grills him, "Isn't it true that he really did obey the speed limit, you're wrong or you're lying?" there is no factual dispute unless Officer Lily admits, "Yes, that is true." The cross-examiner cannot create a factual dispute for purposes of an Article 38.23(a) instruction merely by his questions. It is only the answers that are evidence and may create a dispute. Even the most vigorous cross-examination implying that Officer Lily is the Cretan Liar does not raise a disputed issue. There must be some affirmative evidence of "did not speed" in the record before there is a disputed fact issue.

*Madden*, 242 S.W.3d at 513–14 (footnotes omitted).

Applying *Madden* directly to the case before this court, if Deputy Gibson had testified that Appellant did speed, and another witness, or Appellant, had testified that Appellant did not speed, this disputed factual issue would have been required to be submitted to the jury. *See id.* at 513. With a factual dispute, if the jury were to believe that Appellant was obeying the speed limit and/or that Deputy Gibson was untruthful or unreasonable in believing that Appellant was not, then the jury, under Article 38.23, would be required to disregard the evidence obtained as a result of the unlawful detention that followed. *See id.* If, however, Deputy Gibson had testified that Appellant did speed, and another witness, or Appellant, had testified that he did not remember, did not know, or failed to testify at all, then there would have been no disputed fact to submit because there was no affirmative evidence of a factual conflict. *See id.* Similarly, if Deputy Gibson had testified that Appellant did speed, but opposing counsel had grilled him, "Is it not true that Appellant really did obey the speed limit, you are wrong or you are lying?" there would be no factual dispute

unless Deputy Gibson, to cross-examination, made an admission. *See id.* at 513–14; *see Garza v. State*, 126 S.W.3d 79, 86 & n.3 (Tex. Crim. App. 2004).

Here, as stated in *Madden*, "[t]here must be some affirmative evidence of 'did not speed' in the record before there is a disputed fact issue." *Madden*, 242 S.W.3d at 514; *see Jordan v. State*, 562 S.W.2d 472, 473–74 (Tex. Crim. App. 1978) (when officer testified that a specific person had told him that defendant always carried a gun and that that is why he patted down defendant in bar, but that person testified and denied telling the officer that the defendant always carried a gun, defendant was entitled to jury instruction under Article 38.23(a)). In light of *Madden*, if there is a real contest as to a historical fact underlying the officer's reasonable suspicion, such as evidence at trial contrary to the State's position and the police officer's testimony, the defendant is entitled to a properly requested Article 38.23 instruction on the disputed fact issue. Otherwise, where there is no factual dispute, an Article 38.23 instruction is not appropriate. To create a factual dispute and lay the groundwork for an instruction under Article 38.23, the defense may consider, among other trial tactics, impeaching using contradictory documents or video, waiving the Fifth Amendment and placing the defendant on the stand to contradict the testimony of the officer, presenting third-party witnesses and/or eliciting cross-examination admissions from an officer on site at the time of the stop. Because there was no such evidence in this record, the trial court did not abuse its discretion in denying Appellant's request for a jury instruction on this alleged disputed fact.

Appellant asserts that Deputy Gibson's line of sight was impeded at the intersection and that, therefore, Deputy Gibson could not properly determine whether Appellant was speeding. While cross-examination could certainly be used to attempt to discredit the officer's testimony, consistent with *Madden*, we cannot

hold that, without an officer admission, this sufficiently created an issue of disputed fact. We distinguish this case from *Mills v. State*, 296 S.W.3d 843, 847 (Tex. App.—Austin 2009, pet. ref'd) (officer's responses on cross-examination and his patrol car video raised a fact question about the officer's ability to have seen the alleged traffic offense). In *Mills*, a chain-link fence and two buildings—in addition to the officer being further away from the alleged traffic violation compared to our case—ultimately resulted in a disputed fact issue of whether the officer could see if Mills had activated his turn signal within one hundred feet of the intersection. *Mills*, 296 S.W.3d at 847. In *Mills*, the record contained affirmative evidence, including video from the officer's patrol car and admissions made by the officer during cross-examination, that created a factual dispute. *Id.* at 847–48. Here, the record contains no evidence indicating that Deputy Gibson was not able to see Appellant pass through the intersection with unimpeded line of sight.

Appellant also argues that a fact issue is in dispute because Appellant was only traveling approximately 33 miles per hour when Deputy Gibson caught up to him. However, we do not believe this creates a contested factual issue because, although Appellant had slowed down by the time Deputy Gibson approached from behind, Appellant would have already committed the offense of speeding, evidenced by Deputy Gibson's perception and the fact that Deputy Gibson had to travel at a speed of approximately 73 miles per hour to catch up to Appellant's vehicle. Additionally, Appellant contends that a disputed fact issue was created because Deputy Gibson did not utilize pacing or radar to determine Appellant's speed. However, as detailed above, Appellant's exact speed did not need to be determined. *See* TRANSP. § 545.351(a).

18

Contrary to the first sentence of Appellant's Proposed Additions to the Jury Charge, if it is the presence of reasonable suspicion to justify the traffic stop that was at issue, an Article 38.23 instruction would not be warranted. The legal determination of whether an officer's observation qualifies as reasonable suspicion is a matter of law for the trial court; it is not a fact issue for the jury to resolve following an instruction from the trial court under Article 38.23. *Madden*, 242 S.W.3d at 511 (noting that trial judge decides what "quality and quantum" of facts are necessary to establish legal terms of art like "reasonable suspicion" or "probable cause"). "Only the judge is authorized to determine the legal significance of the material facts in the case and how they affect the ultimate conclusion regarding the existence, *vel non*, of probable cause or reasonable suspicion." *Robinson v. State*, 377 S.W.3d 712, 722 (Tex. Crim. App. 2012).

As suggested by the Texas Court of Criminal Appeals in *Hamal v. State*, a factual dispute requires an Article 38.23 instruction if it is about what an officer "did, said, saw, or heard." 390 S.W.3d 302, 307 (Tex. Crim. App. 2012). In this case, there is no factual dispute about what Deputy Gibson did, said, saw, or heard. The only dispute is as to his *opinion* that what he saw constituted obvious speeding— thereby providing a reasonable suspicion. Specifically, Deputy Gibson testified that he witnessed Appellant traveling at what he concluded were "highway speeds," approximately 60 to 70 miles per hour, in a zone where the posted speed limit was 45 miles per hour. Deputy Gibson admitted that he was not trained to utilize radar and did not pace Appellant's vehicle to determine the exact speed Appellant was traveling. However, Deputy Gibson never contradicted his assertion that Appellant was speeding, and Appellant did not create a factual dispute by providing any affirmative evidence to the contrary. Deputy Gibson's answers to questions on

cross-examination did not create a dispute of a factual issue that thereby required an Article 38.23 instruction.

Because there was no disputed factual issue presented, we hold that the trial court did not err by failing to include Appellant's requested jury instruction under Article 38.23.  Therefore, we overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS

JUSTICE


May 6, 2021

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.