**Opinion filed May 12, 2022**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-18-00144-CR

_____

**JESUS CORTEZ JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 16354**

## M E M O R A N D U M   O P I N I O N

Appellant, Jesus Cortez Jr., was indicted for the first-degree felony offense of possession with intent to deliver a controlled substance—namely, cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2017). After the trial court denied his motion to suppress, Appellant entered an open plea of guilty to the indicted offense and elected to have a jury trial as to punishment. Appellant pleaded true to the enhancement paragraph alleged in the indictment and the jury, after

considering the punishment evidence, assessed his punishment at imprisonment for fifty-five years in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly.

Appellant raises three issues on appeal.[1] In his first two issues, Appellant challenges the trial court's denial of his motion to suppress. In his third issue, Appellant contends that the trial court's punishment charge contained an erroneous parole law instruction that misled the jury. We affirm.

I. *Factual Background*

Appellant was arrested for possession of cocaine after he consented to a search of his vehicle during a traffic stop. Appellant later filed a motion to suppress the evidence that was seized during the search. Trooper Phillip McKenzie, the arresting officer, was the only witness that testified at the hearing on Appellant's motion to suppress.

On the day of his arrest, Appellant was driving on I-20 from Dallas to Abilene in a silver Chevy Malibu. Trooper McKenzie was patrolling the interstate that day and was in the process of concluding a separate traffic stop on I-20 when he noticed Appellant's vehicle at approximately 5:25 p.m. Trooper McKenzie testified that the vehicle caught his attention because it did not have a front license plate. Once he completed the prior traffic stop, Trooper McKenzie pursued the vehicle that Appellant was operating and initiated a traffic stop.

At the inception of the stop, Trooper McKenzie advised Appellant as to the reason for the stop; he also requested Appellant's driver's license and insurance

---

[1]After the State filed its brief, Appellant sought leave to file a supplemental brief. We abated this appeal to accommodate Appellant's request. This appeal was reinstated after Appellant and the State each filed a supplemental brief. We further note that Appellant's original brief that was filed with this court presented only one issue for our review. The three issues that are the subject of this opinion were raised by Appellant in a supplemental brief. Appellant's first issue in his supplemental brief correlates with the sole issue presented by Appellant in his original brief.

information. Trooper McKenzie testified that Appellant produced a Texas ID card in lieu of a driver's license and "appear[ed] to be more nervous than . . . someone on a typical traffic stop." Trooper McKenzie asked Appellant whether he had a driver's license. Appellant initially responded in the affirmative and said that it was "buried under tickets." Trooper McKenzie then asked Appellant to sit in the front passenger seat of his patrol unit so that they could continue talking while he verified the information that Appellant had provided. Appellant agreed and sat, unhandcuffed, in Trooper McKenzie's patrol unit.

At some point, Appellant admitted that he did not, in fact, have a driver's license. Appellant told Trooper McKenzie that the Chevy Malibu was "his wife or his girlfriend's vehicle" and later confirmed the name on the vehicle registration as it appeared on Trooper McKenzie's patrol unit computer. As he continued to verify Appellant's information, Trooper McKenzie also continued to converse with Appellant. Appellant stated that he was making a quick trip to Abilene to pick up a friend and that he intended to drive back to Dallas that same day with the friend, who was going to purchase a vehicle in Fort Worth or Dallas. Appellant could neither recall his friend's last name nor provide a clear answer as to how Appellant knew this person. Appellant additionally gave conflicting responses when Trooper McKenzie asked where Appellant bought and sold vehicles.

Before he ran the background check on Appellant, Trooper McKenzie asked Appellant whether he was transporting anything illegal—specifically, marihuana, methamphetamine, or cocaine. As to marihuana and methamphetamine, Appellant responded, "no." As to cocaine, Appellant responded, "oh, no." Trooper McKenzie subsequently inquired about Appellant's criminal history. Trooper McKenzie testified that Appellant was not forthcoming about one of his prior arrests. Appellant mentioned "at least one assault charge and that [Appellant] had been arrested for

3

some small amounts of drugs." However, the computer check initiated by Trooper McKenzie ultimately revealed that, contrary to Appellant's assertion, he had been arrested in 2001 for possessing a larger quantity of drugs.

Trooper McKenzie then requested, and obtained, Appellant's consent to search the vehicle. Trooper McKenzie explained that, for the duration of the vehicle search, Appellant was unhandcuffed and positioned nearby, "within an acceptable distance for [Trooper McKenzie's] safety but also so that [Appellant] [was] close enough to withdraw that consent at any time."

At the conclusion of the suppression hearing, the trial court denied Appellant's motion to suppress evidence of the cocaine that Trooper McKenzie discovered during his search of the vehicle.

## II. *Motion to Suppress*

In two issues, Appellant argues that trial court erred when it denied his motion to suppress. In his first issue, Appellant contends that, if he was not under arrest when he consented to the search of the vehicle he operated, then Trooper McKenzie lacked reasonable suspicion to extend the "stop past the issues arising from the traffic stop." In his second issue, Appellant alternatively contends that, if he was under arrest when he granted consent to search the vehicle, then Trooper McKenzie obtained Appellant's consent to search in violation of *Miranda*.[2]

### A. *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013); *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We afford almost total deference

---

[2]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

4

to the trial court's determination of historical facts, especially when a trial court's fact findings are based on an evaluation of credibility and demeanor. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The same deference is afforded the trial court with respect to its rulings that concern the application of the law to questions of fact, and to mixed questions of law and fact, if the resolution of those questions turns on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *see Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018).

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma*, 543 S.W.3d at 190; *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007)). Whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

When the record is silent as to the reasons for the trial court's ruling, as in the case before us, we review the evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling, infer the necessary fact findings that support the trial court's ruling if the evidence supports those findings, and assume that the trial court made implicit findings to support its ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007); *Carmouche v. State*, 10 S.W.3d 323, 327–28 (Tex. Crim.

App. 2000). At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). As such, the trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *Johnson v. State*, 803 S.W.2d 272, 287 (Tex. Crim. App. 1990). We will sustain the trial court's ruling on a motion to suppress if it is supported by the record and if it is correct under any applicable theory of law. *Lerma*, 543 S.W.3d at 190; *Ross*, 32 S.W.3d at 855–56.

B. *Analysis*

The Fourth Amendment guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *see Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010); *Wiede*, 214 S.W.3d at 24. This constitutional protection extends to investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Thus, the temporary, warrantless detention of an individual by law enforcement personnel constitutes a seizure within the meaning of the Fourth Amendment and must be reasonable. *Derichsweiler*, 348 S.W.3d at 914. To justify the detention, a law enforcement officer's actions must be supported by reasonable suspicion. *Id.*

Reasonable suspicion for a detention exists when a law enforcement officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably suspect that the detained person has engaged in, is presently engaging in, or soon will engage in criminal activity. *Derichsweiler*, 348 S.W.3d at 914; *see also Wade*, 422 S.W.3d at 668; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This is an objective standard that disregards the actual subjective intent of the officer and focuses, instead, on whether

6

there was an objectively justifiable basis for the detention. *Derichsweiler*, 348 S.W.3d at 914; *see State v. Clark*, 315 S.W.3d 561, 564 (Tex. App.—Eastland 2010, no pet.). An actual traffic violation constitutes an objectively reasonable basis for the stop and sufficiently justifies the initial detention. *Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000).

Further, a seizure for a traffic violation justifies a police investigation of that violation. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The seizure's mission is to address the traffic violation that warranted the stop. *Id.* This "includes ordinary inquiries incident to [the traffic] stop." *Id.* at 355 (alteration in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (internal quotations omitted)). As ordinary inquiries, the officer may request certain information—a driver's license, vehicle registration, and proof of insurance—from the driver, run a computer check on that information, and determine whether any outstanding warrants exist against the driver. *Id.*; *Lerma*, 543 S.W.3d at 190. The officer may also inquire about matters unrelated to the mission of the stop, so long as that inquiry does not prolong the detention beyond the time reasonably required to complete the mission of the stop. *Lerma*, 543 S.W.3d at 190; *see also Rodriguez*, 575 U.S. at 350–51. A stop that exceeds the time necessary "to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350.

When "the computer check is completed, and the officer knows that the driver has a current valid license, no outstanding warrants, and the car is not stolen," the mission of the traffic-stop investigation is complete. *Lerma*, 543 S.W.3d at 191. If the officer "can complete these traffic-based inquiries expeditiously, then that is the amount of time reasonably required to complete" the mission of the stop: "a traffic stop prolonged beyond that point is unlawful." *Rodriguez*, 575 U.S. at 357 (quoting

7

*Caballes*, 543 U.S. at 407) (internal quotations omitted). Therefore, once these official tasks of a traffic stop have ended, the officer may not embark on inquiries unrelated to the purpose of the stop unless "the officer develops reasonable suspicion that the driver or an occupant of the vehicle is involved in criminal activity." *Lerma*, 543 S.W.3d at 191.

Here, the traffic stop was justified at its inception. Trooper McKenzie observed Appellant commit a traffic violation—namely, driving a vehicle without a front license plate. *See* TEX. TRANSP. CODE ANN. § 504.943(a) (West Supp. 2021). In fact, Appellant does not contest the validity of his initial detention. Rather, in his first issue, Appellant argues that, if he was not under arrest at the time when Trooper McKenzie requested Appellant's consent to search the vehicle, then Trooper McKenzie did not have reasonable suspicion to extend the stop beyond the time that was necessary to address the traffic violation that warranted the stop. We disagree.

As an initial matter, Appellant was not under arrest prior to Trooper McKenzie's discovery of the cocaine in Appellant's vehicle. Trooper McKenzie testified that Appellant was neither under arrest nor handcuffed, or otherwise restrained in any manner, throughout the duration of Appellant's detention for the traffic violation. Additionally, the mission of the traffic stop was ongoing as Trooper McKenzie spoke with Appellant in his patrol unit: while he made other inquiries into Appellant's drug activity and criminal history, Trooper McKenzie was actively running computer checks to verify the information that Appellant had provided. In other words, Trooper McKenzie's inquiries about matters that were unrelated to the traffic violation occurred contemporaneously with the ordinary and routine inquiries made by him that were incident to—and, thus, did not prolong—the traffic stop. *See Lerma*, 543 S.W.3d at 190. However, for the purpose of our analysis, we will (1) assume that additional justification for the detention was required and

(2) determine whether Trooper McKenzie developed sufficient reasonable suspicion to prolong Appellant's detention.

When we evaluate whether reasonable suspicion exists, we consider the totality of the circumstances from an objective standpoint and whether the totality of the objective information available to the detaining officer indicates that the officer had a particularized and objective basis to suspect wrongdoing. *Ramirez-Tamayo*, 537 S.W.3d at 36; *Derichsweiler*, 348 S.W.3d at 914–916 (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *Garcia*, 43 S.W.3d at 530. This consideration includes "both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330 (1990). Individual circumstances may appear to be innocent enough in isolation; however, if the circumstances combine to reasonably suggest the imminence of criminal conduct, an investigative detention by the officer is justified. *Derichsweiler*, 348 S.W.3d at 914.

At the suppression hearing, Trooper McKenzie articulated multiple factors from his interaction with Appellant that sufficiently established reasonable suspicion that criminal activity was afoot: (1) Appellant was making a quick turnaround trip on "a known drug corridor"; (2) Appellant could not provide a clear answer as to the name of the person whom Appellant intended to meet and drive with to Dallas that day or how Appellant came to know the person; (3) Appellant's countenance indicated nervousness; (4) Appellant provided inconsistent answers regarding his business of buying and selling cars; (5) Appellant was evasive and misleading about his criminal history when he failed to mention a prior drug arrest; and (6) Appellant's response when Trooper McKenzie asked whether Appellant was transporting cocaine differed from his pattern of responses about other substances. Taken together, the cumulative effect of these circumstances reasonably suggests the

imminence of criminal conduct. Therefore, to the extent that the mission of the traffic-stop investigation had, in fact, been completed and Appellant's initial detention for the traffic violation was, in fact, prolonged, we hold that the continued detention of Appellant was justified based on Trooper McKenzie's reasonable suspicion that Appellant was, or would be, involved in criminal activity. *See Lerma*, 543 S.W.3d at 191. Accordingly, we overrule Appellant's first issue on appeal as it is raised in both the original and supplemental briefs that he filed in this case.

In his second issue, Appellant presents the alternative argument that, if he was under arrest when Trooper McKenzie requested Appellant's consent to search the vehicle, then Trooper McKenzie acquired Appellant's consent in violation of *Miranda*. As we have said, Appellant was not under arrest at any time prior to the discovery of the cocaine in his vehicle. Further, Appellant has cited no case, and we have found none, for the proposition that, during a traffic stop, an officer's development of reasonable suspicion of criminal activity triggers *Miranda*. Because Appellant (1) was merely detained for a traffic violation and (2) consented to Trooper McKenzie's search of his vehicle, we overrule Appellant's second issue on appeal.

### III. *Parole Law Instruction*

In his third issue, Appellant asserts that the trial court charged the jury with an incorrect parole law instruction. Specifically, Appellant contends that, based on Appellant's prior felony conviction that was alleged for enhancement purposes, the trial court's parole law instruction misled the jury to believe that Appellant would be eligible for parole sooner than the law in fact permits. We disagree.

The Texas Code of Criminal Procedure provides for mandatory parole law instructions that must be submitted in the trial court's punishment charge. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4 (West Supp. 2021). Generally, the degree of offense to which the defendant is *convicted at trial* determines which parole law

10

instruction applies. *Id.* In this case, Appellant was indicted for and convicted of a first-degree felony. *See* HEALTH & SAFETY § 481.112(d). Therefore, the parole law instruction applicable to the offense for which Appellant was *convicted*, and that the trial court submitted to the jury, is recited in Article 37.07, Section 4(b). *See* CRIM. PROC art. 37.07, § 4(b). In accordance with Section 4(b), the trial court properly instructed the jury as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or fifteen years, whichever is less.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

*See id.* Appellant's trial counsel objected to the inclusion of the above paragraphs, complaining that:

> My understanding -- and I don't have any law to give this Court on that, but my understanding with TDC and parole is that if you've served a 3G sentence before, that being an aggravated offense, that this case is going to be considered an aggravated offense, and, therefore, the one-fourth sentence would maybe mislead this jury. So I'd ask that Paragraph[s] 3 and 4 be taken out.

Here, the trial court correctly denied Appellant's request to remove the mandatory Section 4(b) parole law instruction from the punishment charge.

Moreover, an additional reason supports the trial court's proper submission of the Section 4(b) parole law instruction. A prior felony conviction that is alleged for enhancement purposes, if proven to be true, and which follows a first-degree felony conviction at trial also triggers the submission of this particular parole law instruction. *See* CRIM. PROC. art. 37.07, § 4(b); PENAL § 12.42(c)(1) (West 2019).

Such is the case here. Therefore, under either scenario, the trial court submitted the correct parole law instruction in its punishment charge.

Appellant has cited no authority, and we have found none, to support his contention that the trial court erred when it submitted the above mandatory parole law instruction to the jury in its entirety. As such, Appellant's argument fails. Because the trial court submitted the correct parole law instruction in its punishment charge, we overrule Appellant's third issue on appeal.

IV. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


May 12, 2022

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.