**Elvis Elvis RAMIREZ-TAMAYO, Appellant**

v.

**The STATE of Texas**

**NO. PD-1300-16**

Court of Criminal Appeals of Texas.

Delivered: September 20, 2017

Steven M. Denny, 2414 Line Ave., Amarillo, Texas 79106, for Appellant.

John R. Messinger, Assistant State Prosecuting Attorney, P.O. Box 13046, Austin, Texas 78711, Stacey Soule, State's Attorney, Austin, TX, for the State.

## OPINION

Alcala, J., delivered the opinion for a unanimous Court.

` In this case, we address whether the record supports the trial court's decision that a peace officer had reasonable suspicion of narcotics possession to continue the detention of a driver beyond the purpose of the stop for a traffic violation. In his appeal from the trial court's order denying his motion to suppress, Elvis Elvis Ramirez-Tamayo, appellant, argued that the deputy who stopped him lacked reasonable suspicion to prolong his detention after deciding to issue him a warning ticket for speeding, and the court of appeals agreed. *See Ramirez-Tamayo v. State*, 501 S.W.3d 788, 800 (Tex. App.—Amarillo 2016). In the instant petition for discretionary review challenging this ruling, the State argues that the court of appeals erred by failing to defer to the trial court's implicit determination that the credible officer's training and experience were adequate to support his inferences and deductions that the otherwise seemingly innocent circumstances led to reasonable suspicion of narcotics possession in this case, and by failing to consider the totality of the evidence in examining whether there was reasonable suspicion.[1] We agree with the State and, therefore, reverse the judgment of the court of appeals and reinstate the trial court's judgment of conviction.

## I. Background

In 2015, appellant was driving on Interstate 40 near Amarillo when he was stopped for speeding. The traffic stop eventually led to the discovery of approximately twenty pounds of marijuana that had been hidden inside the door panels of appellant's rental car. Appellant was arrested and later charged with possession of marijuana in an amount greater than five pounds but less than fifty pounds. *See* TEX. HEALTH & SAFETY CODE § 481.121(b)(4). Appellant filed a pre-trial motion to suppress the evidence in which

---

1. This Court granted review of the State's two grounds for review:
 1. "The court of appeals ignored the law governing the review of suppression rulings by, *inter alia*, considering the circumstances in isolation, focusing on their innocent nature, and generally failing to defer to the fact-finder."
 2. "Under what circumstances is a reviewing court permitted to ignore a credible officer's inferences and deductions based on his training and experience?"

he argued that the deputy lacked reasonable suspicion to continue detaining him beyond the time needed to conduct the traffic stop for speeding.

Deputy Simpson was the sole witness at the hearing on appellant's motion to suppress. At the time of the hearing, which took place about a year after the traffic stop, Deputy Simpson testified that he had been employed by the Potter County Sheriff's Office for nine years and had been a licensed peace officer in Texas for approximately eight years. He stated that he was assigned to the Criminal Intelligence Unit and "mainly work[ed] the highway and interdiction functions." He agreed with the State's description of his duties as being "sort of like patrolling; [ ] you're out on the streets in your car every day[.]"

Deputy Simpson recounted that he stopped appellant for driving 78 miles per hour in a 75 mile per hour zone on the interstate freeway. For safety reasons, Deputy Simpson approached the passenger side of appellant's car rather than the driver's side. The deputy saw that appellant "appeared confused" after he approached on the passenger side, and, rather than lowering the window, appellant leaned across the front seat to open the passenger door. The deputy testified that

he found this behavior "strange" because appellant was driving a rented, almost brand-new car, which would likely have electric windows that easily could be rolled down with the push of a button from the driver's side of the car.[2] The deputy also believed that it would be unlikely that a rental car company would rent a vehicle whose power windows did not work because, ordinarily, a rental car company would inspect the vehicle prior to renting it to make sure that it was fully functional. The deputy testified that he did not see any damage to the window or car to explain why appellant behaved as if the window was inoperable. The deputy explained that he felt it was suspicious that appellant did not roll down the passenger window because, in his experience, he had previously encountered drug traffickers who had concealed drugs inside car door panels making the windows inoperable.[3]

In addition to appellant's opening of the door rather than rolling down the window, the deputy discussed four additional "factors" that he observed during the traffic stop that led him to suspect that appellant was trafficking drugs. First, he noticed that appellant wore "a lot of cologne." The deputy described it as being "a very over-

2. With respect to this matter, the following exchange occurred between the prosecutor and Deputy Simpson:
 [State]: Did you find [leaning over to open the passenger door] strange?
 [Deputy]: Yes, I did.
 [State]: Why is that?
 [Deputy]: Most cars, they have electric windows, especially newer cars, and they have buttons on the driver's door that operate the window, so it would be easier just to hit the button and roll down the window to talk to me.

3. As to this matter, the following exchange occurred:
 [State]: Okay. How does that suspicion [about the fact that it was a rental car with an apparently inoperable window], how

would that relate to drug trafficking on I-40?
[Deputy]: It is—the doors of the vehicle, there's a void in between the inside panel and the outside of the door and it's very commonly—it's a void used to traffic drugs. They'll stuff the doors full and those naturally would....
[State]: And so have you commonly seen people that are trafficking drugs to stuff the passenger doors, I guess, between the plastic and the metal of that door?
[Deputy]: Yes.
[State]: Okay. And in your training and experience, dealing with I-40, you've seen that a few times or many times?
[Deputy]: I've seen it a few times, yes.

whelming smell of cologne" and "more than most people" would wear. The deputy testified that, based on his training and experience, drug traffickers frequently "use cover odors to cover the odor of the drugs they're hauling." Second, the deputy noted that appellant appeared to have been chain smoking in the car leaving cigarette ashes all over the car "in the floorboards and everything" as well as the odor of cigarette smoke. Because appellant was driving a rental car with two decals on the windows indicating that smoking was prohibited, the deputy agreed with the suggestion that appellant's chain smoking was "more peculiar than a person smoking in their every day car." Furthermore, he opined that a chain-smoking driver "would probably at least crack the window if not roll it down" to try to avoid the penalty fee for smoking in a rental car. This additionally appeared to indicate that the car's windows could not be rolled down. Third, Deputy Simpson agreed that, "based on [his] training and experience, based on doing these interdiction stops on I-40, [ ] it [is] pretty common that people are carrying drugs in rental cars versus cars that they own." Fourth, the deputy noticed that appellant appeared "nervous and excited." Although he acknowledged that "a little bit" of nervousness and excitement would be normal for a stopped driver, Deputy Simpson described appellant's state as being one of "extreme nervousness" in excess of what he considered normal. He noted that appellant was unable to "get comfortable" and was "constantly shifting in the seat and crossing his arms and he couldn't sit still, even for just a few minutes." Even

after the deputy informed appellant that only a warning would be issued, appellant did not become less nervous, which the deputy viewed as unusual in his experience. The deputy, however, conceded that appellant's confusion and nervousness could have been due to the fact that English was not appellant's first language and he possibly had not fully understood what the deputy was saying to him.

By the time that he handed appellant a warning for speeding, Deputy Simpson testified that he had formed reasonable suspicion to believe that appellant was trafficking drugs based on all of the factors described above. Accordingly, at that point, Deputy Simpson asked appellant whether the car contained drugs, and he also asked for permission to search the vehicle. However, due to the language barrier, Deputy Simpson was unable to determine whether appellant consented, and he instead decided to rely on the use of a drug-detection dog that had arrived on the scene prior to the moment at which he handed appellant the warning ticket. The dog walked around the perimeter of the car and alerted to the presence of illegal drugs. After the drug dog alerted, the deputy initiated a search of appellant's car and discovered a total of approximately twenty pounds of marijuana in vacuum-sealed plastic bags that had been concealed inside the car's four door panels.[4]

The trial court denied appellant's motion to suppress. Neither appellant nor the State requested findings of fact and conclusions of law. Following the denial of his

---

4. The record is silent as to the amount of time that elapsed from the moment that Deputy Simpson stopped appellant for speeding until the moment that the drug dog gave a positive alert for illegal narcotics. The record is also silent as to the amount of time that elapsed between the issuance of the warning and the drug dog's positive alert. Deputy Simpson's

testimony appears to suggest that the drug dog was deployed almost immediately following the issuance of the warning, but the actual time line is unclear. We will assume for the sake of our analysis that there was at least some prolonging of the detention to allow for the drug dog to be deployed and give a positive alert.

suppression motion, appellant pleaded guilty and received a sentence of four years' imprisonment, probated for four years.

The court of appeals reversed the trial court's order denying appellant's motion to suppress. *Ramirez-Tamayo*, 501 S.W.3d at 800. The court of appeals explained that the record was lacking in sufficient details to establish exactly what type of training or experience Deputy Simpson had that would allow him to reliably form reasonable suspicion based on the otherwise seemingly innocent circumstances—the fact that appellant opened the passenger door instead of lowering the window, wore heavy cologne, chain smoked, drove a rental car, and was extremely nervous. *Id.* at 799-800. The court of appeals acknowledged that a law enforcement officer may properly develop reasonable suspicion on the basis of a suspect's seemingly innocent behavior when the officer's expertise, training, or experience makes him aware that such behavior is likely indicative of criminal activity under the circumstances. *Id.* at 794-95. But the court of appeals reasoned that, before a court may credit an officer's opinion on such a matter, the officer "should be shown to have knowledge, skill, experience, training, or education about the topic on which [he] speak[s][.]" *Id.* at 795. The court of appeals found that type of evidence lacking in the instant case with respect to Deputy Simpson's qualifications. It explained that the State "simply proffered evidence of [the deputy's] job titles and employment categories.... [A]side from the deputy simply invoking his 'knowledge, training, and expertise,' the State did little to illustrate of what it consisted or how it was garnered." *Id.*

In view of its determination that the record lacked information regarding Deputy Simpson's training and experience that

could support the reliability of his formation of reasonable suspicion, the court of appeals concluded that the State had failed to carry its burden to explain why the activities and circumstances relied on here were sufficiently distinguishable from the activities of innocent people under the same circumstances. *Id.* at 800 (citing *Wade v. State*, 422 S.W.3d 661, 670 (Tex. Crim. App. 2013)). The court of appeals reversed the trial court's ruling denying appellant's motion to suppress. *Id.*

## II. The Record Demonstrates Reasonable Suspicion

After reviewing the applicable law, we address the State's arguments that the court of appeals erred by rejecting the trial court's implicit determination that the deputy's observations were credible and reliable based on his training and experience, and by failing to consider the totality of the record and the combined logical force of all of the circumstances in determining that the deputy lacked reasonable suspicion.

### A. Applicable Law

 An appellate court applies a bifurcated standard of review to a trial court's ruling on a motion to suppress. *Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016). We afford almost complete deference to the trial court's determination of historical facts, especially when those determinations are based on assessments of credibility and demeanor. *Id.* (citing *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010)). On the other hand, we apply a *de novo* standard of review to the legal significance of the facts as found by the trial court, including whether a particular set of facts is sufficient to give rise to reasonable suspicion. *Id.* When findings of fact are not entered, as here, we "must view the evidence 'in the light most favorable to the trial court's ruling' and 'assume

that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.'" *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006) (quoting *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).

The Fourth Amendment prohibits unreasonable searches and seizures by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In such cases, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). A seizure justified only by a traffic violation becomes unlawful if prolonged beyond the time reasonably required to conduct the traffic stop. *Rodriguez v. United States*, — U.S. —, 135 S.Ct. 1609, 1612, 191 L.Ed.2d 492 (2015). Thus, continuing a brief investigatory detention beyond the time necessary to conduct a traffic stop requires reasonable suspicion of criminal activity apart from the traffic violation. *See id.* at 1616.

"'Reasonable suspicion to detain a person exists when a police officer has 'specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity.'" *Furr*, 499 S.W.3d at 878 (quoting *Wade*, 422 S.W.3d at 668). This is "an objective standard that disregards the actual subjective intent of the arresting officer and looks, instead, to whether there was an objectively justifiable basis for the detention." *Wade*, 422 S.W.3d at 668. In assessing whether reasonable suspicion exists, a reviewing court may take into account an officer's ability to "draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). A reviewing court must give "due weight" to factual inferences drawn by local judges and law enforcement officers. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

When assessing the existence of reasonable suspicion, a reviewing court must look to the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744. Although the individual circumstances may seem innocent enough in isolation, if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Wade*, 422 S.W.3d at 668. "'It is enough to satisfy the lesser standard of reasonable suspicion that the information is sufficiently detailed and reliable—*i.e.*, it supports more than an inarticulate hunch or intuition—to suggest that something of an apparently criminal nature is brewing.'" *Id.* (quoting *Derichsweiler v. State*, 348 S.W.3d 906, 917 (Tex. Crim. App. 2011)). "The relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Derichsweiler*, 348 S.W.3d at 914. "A determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct." *Leming v. State*, 493 S.W.3d 552, 565 (Tex. Crim. App. 2016).

## B. Deferring to the Trial Court's Implied Findings, the Deputy Had Adequate Expertise and Training to Reliably Make the Inferences and Deductions that He Made

In its second ground, the State suggests that the court of appeals erred by failing to defer to the trial court's implied finding that the deputy was credible and reliable with respect to his training and experience that would enable him to reasonably suspect that appellant may have been in possession of illegal drugs. We agree.

We disagree with the court of appeals's elevation of the standard of proof by requiring extensive details of an officer's training and experience as a predicate for showing that an officer is capable of reasonably making inferences and deductions based on that training and experience. *See Ramirez-Tamayo*, 501 S.W.3d at 799-800. As long as there is some evidence in the record to support the trial court's implied finding that the officer was reasonably capable of making rational inferences and deductions by drawing on his own experience and training, the State does not have an additional burden to include extensive details about the officer's experience and training, and, under the circumstances of this case, it does not need to strictly establish a predicate that the officer is an expert in narcotics detection. *See Arvizu*, 534 U.S. at 273-74, 122 S.Ct. 744. Thus, the court of appeals erred to the extent that it required the record to strictly show that the officer was an expert in narcotics detection before it would defer to the trial court's implied factual determination that he was reasonably experienced and trained in narcotics detection to rationally ascertain that the factors in this case were reasonably suspicious of illegal drug possession.

We also disagree with the court of appeals's assessment that the record was lacking in details to establish exactly what type of training or experience Deputy Simpson had that would allow him to reliably form reasonable suspicion based on the otherwise seemingly innocent facts. *Ramirez-Tamayo*, 501 S.W.3d at 799-800. The court of appeals erred by failing to view the record in a light most favorable to the trial court's ruling. The court of appeals should have deferred to the trial court's implied finding that the deputy was credible and that he had adequate training and experience to reliably assess whether the otherwise seemingly innocent circumstances in this case were suspicious of illegal drug possession. Viewing the evidence in a light most favorable to the trial court's ruling, the trial court implicitly found that the deputy had about seven years of experience as a licensed Texas peace officer conducting drug interdiction on highways. During this time, he came to know that "very commonly" illegal narcotics can be hidden inside car doors resulting in the windows becoming inoperable, and he had personally observed such instances on I-40 "a few times." Additionally, viewing the evidence in a light most favorable to the ruling, the trial court accepted that a peace officer who spends his days patrolling on the highways could reasonably infer that a new-model car, serviced by a rental company, without visible signs of damage to the door or window, should have operable power windows that can easily be activated from the driver's seat. Further, in light of the ruling, the trial court implicitly found that a peace officer with several years of experience would be aware that strong odors are often used to mask the smell of drugs, and he would be able to recognize an abnormal degree of nervousness compared to a more usual level of nervousness attending police-citizen encounters. Finally, viewing the evi-

dence in a light most favorable to the ruling, the trial court accepted that, "based on doing these interdiction stops on I-40," Deputy Simpson knew that drug couriers commonly use rental cars rather than personally owned vehicles. Examining the record as a whole, therefore, we conclude that the court of appeals erred by declining to afford any weight to Deputy Simpson's assessment that the circumstances were suspicious in light of his training and experience as a law enforcement officer.

Furthermore, we disagree with the court of appeals that the trial court should not have found the officer reliable because he had only a subjective hunch based on unsupported generalizations. Here, the record shows objective observations to justify the detention. *See Wade*, 422 S.W.3d at 668. Deputy Simpson's bases for his suspicion were specific, objective observations about appellant's particular behavior and why it was suggestive of drug activity, rather than unarticulated conclusions supported only by a generalized reference to his "training and experience." Thus, Deputy Simpson provided the trial court with adequate facts so that appellant's detention could be " 'subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances.' " *See Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005) (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. 1868).

Examining the record in a light most favorable to the trial court's ruling, we conclude that it supports the trial court's implied factual finding that Deputy Simpson was credible and reliable and that his training and experience made him reasonably capable of rationally suspecting that appellant was in possession of illegal drugs. We, therefore, sustain the State's second ground.

## C. In View of the Totality of the Circumstances, The Deputy Had Reasonable Suspicion to Prolong the Detention

In its first ground, the State contends that the court of appeals misapplied the law by viewing the circumstances in isolation, rather than considering the totality of the information known to the officer at the time of the detention. We agree. Applying a *de novo* review to the totality of the facts in the record, we hold that the deputy had reasonable suspicion to prolong appellant's detention for the purpose of having a narcotics-detection dog sniff the exterior of the car.

The court of appeals mistakenly failed to consider the totality of the circumstances that should have included the logical force from the combination of all the facts taken together. The totality of the record shows that appellant was driving a rental car on an interstate highway with a possibly inoperable window that the deputy knew could be caused by the presence of illegal drugs hidden inside the door, that appellant and his car presented unusually strong odors that can be used to conceal the scent of illegal drugs, and that appellant was abnormally nervous during his contact with the deputy. It may be true that, taken individually, none of these facts provide an adequate foundation from which to form reasonable suspicion that appellant was engaging in illegal conduct. *See, e.g., Wade*, 422 S.W.3d at 670 (a suspect's nervousness, though relevant, is insufficient by itself to constitute reasonable suspicion). However, although "some circumstances may seem innocent in isolation, they will support an investigatory detention if their combination leads to a reasonable conclusion that criminal activity is afoot," *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014). In this case, we conclude that the combined logical force of these

circumstances when examined together—a new-model rental car with what appeared to be inoperable windows despite the absence of any visible damage to the car, the presence of unusually strong odors, the location of the stop being along an interstate highway, and an abnormally nervous driver—permit a reasonable inference that appellant was engaging in illegal activity.

The court of appeals did acknowledge that Deputy Simpson provided support for his view that appellant's opening of the door rather than lowering the window was suspicious based upon the deputy's past experiences in which drugs concealed inside a car door had prevented the window from operating. *Ramirez-Tamayo*, 501 S.W.3d at 798. However, the court of appeals disregarded this factor because the deputy could have but did not test whether the window was operable. *Id.* at 799. Moreover, noting that innocent reasons could explain appellant's choice to lean over and open the door rather than lowering the window and that Deputy Simpson testified that he had seen drugs concealed in car doors only a "few times," the court of appeals found that Deputy Simpson's "leap from 1) opens door to 2) drugs in door" was "little more than a hunch." *Id.*

The court of appeals erroneously faulted Deputy Simpson for not attempting to test the windows to verify his suspicion that drugs concealed inside the car door prevented the windows from operating properly. A determination that reasonable suspicion exists does not require negating the possibility of innocent conduct. *Leming*, 493 S.W.3d at 564. Moreover, while reasonable suspicion does not authorize an unduly prolonged detention and investigation, employing a trained drug dog to perform an open-air search by walking around the car is a reasonable method of confirming or dispelling the reasonable suspicion that a vehicle contains drugs. *Matthews*, 431

S.W.3d at 603. Thus, the court of appeals was incorrect to require Deputy Simpson to test the window's operability before considering appellant's choice to open the door suspicious.

We sustain the State's first ground.

### III. Conclusion

We hold that the court of appeals erred by failing to defer to the trial court's implicit determination that the deputy was credible and reliable in explaining why the otherwise apparently innocent behaviors gave rise to reasonable suspicion under the circumstances, and by failing to consider the combined logical force or the totality of the evidence in assessing the existence of reasonable suspicion. Accordingly, the court of appeals erred by reversing the trial court's order denying appellant's pretrial motion to suppress. We, therefore, reverse the judgment of the court of appeals and reinstate the trial court's judgment of conviction.