# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00789-CR

---

**Timothy Paul Hill, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM COUNTY COURT AT LAW NO. 9 OF TRAVIS COUNTY
### NO. C-1-CR-19-201306, THE HONORABLE KIM WILLIAMS, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Timothy Paul Hill moved to suppress evidence obtained after the State detained him on suspicion of driving while intoxicated. The trial court denied the motion, and Hill made a plea agreement that preserved his right to appeal the suppression denial. Based on the agreement, the trial court found Hill guilty of DWI, a Class A misdemeanor in this case, and sentenced him to one year of confinement and a $4,000 fine but suspended the sentence for 20 months of community supervision and probated $3,000 of the fine. *See* Tex. Penal Code § 49.04(a), (d). In a sole appellate issue, Hill contends that the trial court abused its discretion by denying his motion to suppress because there was no reasonable suspicion to detain him. We affirm.

## BACKGROUND

Officer Jelani Johnson was in his patrol car working for the Austin Police Department's DWI unit when around 3:00 a.m. at the Sixth Street bar district, he saw a Ford vehicle parked in a parking spot on the side of the road with its back lights on. The lights then

turned off, and Hill got out of the driver's seat, closed the door, and started walking away. Ofcr. Johnson drove past the Ford and saw "fresh" damage to the side of the vehicle and damage to the left-rear tire, both noticeable from afar and enough to keep the car from operating. He thought the side damage was fresh because he saw no rust in it and the tire damage was only about "an hour or so" old.

Ofcr. Johnson drove a little further and asked Hill what had happened to the Ford. Hill, slurring his speech and with a confused look, said that he did not know what Ofcr. Johnson was talking about. Ofcr. Johnson said, "The vehicle that I just saw you get out of," and Hill again answered that he did not know what Ofcr. Johnson was talking about. Lying suggested to Ofcr. Johnson "intoxication or something [he] would consider." He, considering the time of night; the bar-district setting; the possibility that the Ford had been in a collision after which someone left the scene; and Hill's slurred speech, confused look, and seemingly implausible denial about the Ford that the officer wanted to talk about, decided to investigate further. He then detained Hill "[f]or suspicion of possible DWI."

After he was detained, Hill talked with officers and revealed that he had been driving the Ford. Based on the officers' investigation, the State charged Hill with DWI with a blood alcohol concentration level of 0.15 or more. Hill moved to suppress all evidence obtained from his detention onward, but the trial court denied the motion. Hill now appeals that denial.

**STANDARD OF REVIEW AND APPLICABLE LAW**

We review the denial of a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At the hearing on the motion, the trial court is the sole factfinder and judge of the credibility of the witnesses and of

the weight to be given their testimony. *Id.* at 190. We therefore afford almost complete deference to its determinations of historical facts. *Id.* But we review de novo the legal significance of the facts found by the court, including, for example, whether they suffice to give rise to reasonable suspicion. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017); *accord Lerma*, 543 S.W.3d at 190.

We must view the evidence in the light most favorable to the trial court's decision. *State v. Garcia*, 569 S.W.3d 142, 152–53 (Tex. Crim. App. 2018). When, as here, the trial court makes explicit fact findings, we decide whether the evidence, still viewed in the light most favorable to the court's decision, supports the findings. *Id.* at 153. We must defer to its findings if they, when read in their totality, reasonably support the court's legal conclusions. *Id.* This is so even if the findings might be ambiguous when viewed piecemeal and in isolation. *Id.* We give non-technical, common-sense deference to each finding individually and to the totality of the findings. *See id.*

We sustain the trial court's decision if it is correct under any applicable theory of law. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id.*

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV; *Lerma*, 543 S.W.3d at 190. Its protections extend to brief, warrantless investigatory stops of persons or cars falling short of a traditional arrest. *See Ramirez-Tamayo*, 537 S.W.3d at 36. Continuing a brief investigatory detention beyond the time necessary to investigate a traffic violation requires reasonable suspicion of criminal activity apart from the traffic violation. *See id.* (citing *Rodriguez v. United States*, 575 U.S. 348, 357–58 (2015)). Police may diligently pursue

3

means of investigation likely to confirm or dispel their suspicions of other crime quickly so long as they do not unnecessarily detain the driver. *Lerma*, 543 S.W.3d at 195.

Reasonable suspicion to detain a person exists when an officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Ramirez-Tamayo*, 537 S.W.3d at 36. The standard for reasonable suspicion is an objective one, so it disregards the officer's actual subjective intent and looks instead to whether there was an objectively justifiable basis for the detention. *Id.* To assess whether reasonable suspicion exists, a reviewing court must look to the totality of the circumstances for whether the officer had a particularized and objective basis for suspecting legal wrongdoing. *Id.* For example, although in isolation some circumstances surrounding a detention may seem innocent, if the totality of the circumstances reasonably suggests the imminence of criminal conduct, then an investigative detention is justified. *See id.*

A reviewing court may consider the officer's ability to draw on the officer's own experience and specialized training to make inferences from, and deductions about, all the information available that otherwise might elude an untrained person. *Id.* A reviewing court must give due weight to factual inferences drawn by local judges and law-enforcement officers. *Id.*

Information that is detailed and reliable enough to suggest that "something of an apparently criminal nature is brewing" satisfies the standard of reasonable suspicion. *Id.* The articulable facts need only show that some activity out of the ordinary has occurred, some suggestion to connect the detainee to the unusual activity, and some indication that the unusual activity relates to crime. *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021). By contrast, an inarticulate hunch or intuition is not enough. *Ramirez-Tamayo*, 537 S.W.3d at 36.

4

Reasonable suspicion also may attach to "particular non-criminal acts," so whether conduct is innocent or criminal is not the relevant inquiry. *See id.* Reasonable suspicion may exist even amid innocent conduct. *Id.*

## REASONABLE SUSPICION FOR DETENTION

In his sole appellate issue, Hill contends that the trial court abused its discretion by denying his motion to suppress. He argues that even after his and Ofcr. Johnson's consensual discussion, the latter "did not have reasonable suspicion that Hill had been driving the vehicle" or that he "was guilty of public intoxication." The State responds that Ofcr. Johnson need not have "suspect[ed] any particular penal infraction," as Hill argues, but only "that Hill had engaged in, was engaging in, or soon would engage in some sort of criminal activity." It argues that the totality of the circumstances that Ofcr. Johnson observed and his reasonable inferences from the circumstances supported reasonable suspicion.

The State is correct that Ofcr. Johnson need not have had reasonable suspicion tied to a particular offense but needed only reasonable suspicion "to suggest that *something* of an apparently criminal nature is brewing." *See Derichsweiler v. State*, 348 S.W.3d 906, 916–17 (Tex. Crim. App. 2011); *accord Johnson*, 622 S.W.3d at 384 & n.27, 388 & n.34 (quoting *Derichsweiler*, 348 S.W.3d at 916, 917).

Under the governing standards, we conclude that reasonable suspicion was present. The trial court found Ofcr. Johnson credible and made the other following findings of fact. Ofcr. Johnson saw the Ford around 3:00 a.m. in a bar district. *See Johnson*, 622 S.W.3d at 387 (setting that "ha[s] a significant association with criminal activity" can support reasonable suspicion); *Ramirez-Tamayo*, 537 S.W.3d at 36 (officer may draw on his experience to make

reasonable inferences, and courts must give "due weight" to factual inferences drawn by local law enforcement). The Ford's lights were on but then turned off, and Hill got out of the driver's seat and started walking away. *See* Tex. Penal Code § 49.04(a) ("A person commits an offense if the person is intoxicated while *operating* a motor vehicle in a public place." (emphasis added)); *Denton v. State*, 911 S.W.2d 388, 389 (Tex. Crim. App. 1995) (statutory "operating" does not necessarily involve driving); *accord Brister v. State*, 449 S.W.3d 490, 494 & n.7 (Tex. Crim. App. 2014). Ofcr. Johnson noticed "fresh" damage on the side of the Ford and to its left-rear tire, and the damage would hinder the Ford from operating. Ofcr. Johnson believed the damage to be "fresh" and explained why. Ofcr. Johnson twice asked Hill what had happened, and Hill responded both times—including after Ofcr. Johnson clarified that he was asking about the Ford that Hill had just gotten out of—that he did not know what the officer was talking about. Ofcr. Johnson observed Hill's speech to be slurred and a confused look on his face and thought the Ford might have been in a collision after which someone involved left the scene. After observing Hill's "lying, evasive and suspicious behavior" and signs of Hill's intoxication, Ofcr. Johnson decided to conduct a DWI investigation and detained Hill to do so.

We conclude that the evidence supported all these findings and that they in their totality amount to articulable facts that support a reasonable conclusion that Hill had been involved in criminal activity. *See Johnson*, 622 S.W.3d at 387–88; *Ramirez-Tamayo*, 537 S.W.3d at 36. We thus overrule Hill's sole issue.

6

**CONCLUSION**

We affirm the trial court's denial of the motion to suppress.

 

 

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:   August 5, 2021

Do Not Publish