

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00111-CR

**THE STATE OF TEXAS,**

                                                            **Appellant**

 **v.**

**TRAVIS LAYTON SPIVEY,**

                                                            **Appellee**

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2017-2107-C1

## MEMORANDUM OPINION

Appellee, Travis Layton Spivey, was indicted for possessing four grams or more, but less than 200 grams, of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d). Prior to trial, Spivey filed a motion to suppress evidence obtained during a traffic stop that resulted in the discovery of methamphetamine. The court granted the motion to suppress in part, concluding that there was reasonable suspicion for the initial traffic stop, but that law enforcement unreasonably prolonged the detention of Spivey

after the primary purpose of the stop was concluded. The trial court suppressed all physical and testimonial evidence obtained from the prolonged detention, which included the methamphetamine that was found. Pursuant to article 44.01(a)(5) of the Code of Criminal Procedure, the State appeals the trial court's ruling on Spivey's motion to suppress. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5). We reverse and remand.

## Standard of Review

We review the trial court's ruling on a motion to suppress evidence for an abuse of discretion, using a bifurcated standard. *See Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Guzman v. State*, 955 S.W.2d 85, 88-89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

When ruling on a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, we view all of the evidence in the light most favorable to the ruling. *Garcia-Cantu v. State*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008).

When a trial judge makes explicit fact findings on a motion to suppress, an "appellate court [must first] determine whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Kelly*, 204 S.W.3d at 818. "The appellate court then reviews the trial court's legal ruling[s] de novo unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.*

**Analysis**

In two issues, the State contends that the trial court abused its discretion by suppressing the methamphetamine and Spivey's statements because the trial court failed to consider the totality of the circumstances when determining if officers had reasonable suspicion to prolong the traffic stop. We agree.

THE TRIAL COURT'S FINDINGS OF FACT

Here, the trial court made forty-three findings of fact. Among the findings made are that Officer Darryl Welch and Officer Michael Willett of the Mart Police Department observed Spivey at around 11 p.m. in the parking lot of a twenty-four hour CEFCO gas

station in Mart, Texas. The two officers observed Spivey for approximately ten minutes as he looked through a trashcan and moved his vehicle to a couple of different spots in the parking lot. Neither officer recognized Spivey or the vehicle. Officer Willett confirmed that the vehicle had an expired registration sticker.

Officer Willett conducted a routine traffic stop of the vehicle for the expired registration sticker as the vehicle was leaving the CEFCO parking lot. During the traffic stop, Spivey explained that he had lost a spare key to his car and was looking for his lost key in the CEFCO parking lot. While discussing the purpose of the traffic stop, Spivey "continued to look for his license, insurance[,] and keys in the areas around him in his driver's seat." Because Spivey "continued to rummage and everything through the vehicle," Officer Willett asked Spivey to step out of the passenger vehicle to conduct a *Terry* frisk for officer safety. While conducting the pat down, Officer Willett questioned Spivey about a "soft bulge" in his right pocket. Spivey told Officer Willett it was money, and Spivey removed the money at Officer Willett's request.

Officer Willett completed a check of Spivey's driver's license, determined that there were no outstanding warrants against Spivey, and confirmed the automobile's registration and proof of insurance. Officer Willett asked Spivey if there was anything illegal in the vehicle to which Spivey replied there was not anything illegal in the vehicle. Officer Willett did not observe any contraband in plain view inside the vehicle or on Spivey's person. Nevertheless, Officer Willett informed Spivey that he was going to have

a canine conduct "an open-air canine sniff of the passenger vehicle." Officer Willett did not issue a ticket or warning to Spivey for the expired registration.

It took thirteen minutes and forty-one seconds for the canine and its handler, Sergeant Cosper, to arrive. Three minutes after arriving, Sergeant Cosper conducted the canine sniff of Spivey's vehicle. The canine alerted on the vehicle, and Spivey was placed in handcuffs. Thereafter, Officer Willet, Officer Welch, and the Sergeant Cosper searched Spivey's vehicle and found a lockable, closed container in the trunk of the vehicle that contained illegal contraband.

The trial court also made the following findings of fact:

**Finding of Fact No. 33:** Based on Officer Willett's testimony and BWC [body-worn camera], Officer Willett did not articulate *any additional facts to support any unrelated investigation*.

**Finding of Fact No. 34:** Based on Officer Willett's testimony and BWC, Officer Willet[t] did not articulate *any facts of criminal activity* beyond the scope of the Expired Registration violation.

(Emphasis in original). However, there are several facts asserted in Officer Willett's testimony that undermine Findings of Fact Nos. 33 and 34, as well as Conclusion of Law Nos. 12, 13, 14, 15, 16, 17, and 18, which concluded that Officer Willett did not provide reasonable, articulable facts to lawfully support the continued detention of Spivey and that the lack of reasonable suspicion rendered the prolonged detention of Spivey unreasonable.

Specifically, in his testimony at the suppression hearing, Officer Willett testified that he and Officer Welch believed Spivey was trying to wait them out in the CEFCO parking lot because Officer Welch was in a highly visible, marked patrol car. Additionally, Officer Willett recounted that Spivey was nervous, sweating, and "spastically moving about the vehicle" during the traffic stop. The "soft bulge" in Spivey's pocket was two rolls of cash that amounted to "close to $2,000." Officer Willett testified that "it's not common for people to carry rolls of money generally," and that "it was a larger amount. It's common whenever people are purchasing narcotics." Furthermore, when Officer Willett asked if there was anything illegal in the vehicle, Spivey "advised that he was not the only person that drives the vehicle . . . ." This was a red flag to Officer Willett because "if you're sure that there's nothing illegal in the vehicle, you'd be confident and you wouldn't have to advise me that other people drive the vehicle." Officer Willett then stated that it is common for people possessing drugs to say that they are not the only person who had access to the vehicle.

These additional facts, when combined with Spivey's strange behavior observed in the CEFCO parking, establish that Officer Willett had reasonable suspicion for the continued detention of Spivey.[1] *See State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App.

---

[1] "Whether the facts known to the officer at the time of the detention amount to reasonable suspicion is a mixed question of law that is reviewed de novo on appeal." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013) (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996); *State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012)).

2018) ("Each case involving an officer's stop must be evaluated objectively, under the totality of the circumstances, to determine whether the officer acted reasonably."); *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015) ("Reasonable suspicion exists if the officer has specific articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably suspect that a particular person has engaged or is (or soon will be) engaged in criminal activity."); *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (noting that we review a reasonable suspicion determination by considering the totality of the circumstances); *see also Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) ("A seizure justified only by a traffic violation becomes unlawful if prolonged beyond the time reasonably required to conduct the traffic stop. . . . Thus, continuing a brief investigatory detention beyond the time necessary to conduct a traffic stop requires reasonable suspicion of criminal activity apart from the traffic violation." (citing *Rodriguez v. United States*, 575 U.S. 348, 350, 357, 135 S. Ct. 1609, 1612, 1616, 191 L. Ed. 2d 492 (2016)). As such, we conclude that Findings of Fact Nos. 33 and 34, as well as Conclusion of Law Nos. 12, 13, 14, 15, 16, 17, and 18 are not supported by the record and, thus, are not entitled to any deference by this Court. *See State v. Whittington*, 401 S.W.3d 263, 271 (Tex. App.—San Antonio 2013, no pet.) ("If, however, the trial court's findings and conclusions are not supported by the record, we are not bound by them." (citing *State v. Mazuca*, 375 S.W.3d 294, 308-09 (Tex. Crim. App. 2012) (rejecting the trial court's conclusion on "the flagrancy of the police action" because

it was not supported by the record); *Gonzales v. State*, 369 S.W.3d 851, 854-55 (Tex. Crim. App. 2012); *Tucker v. State*, 369 S.W.3d 179, 187 (Tex. Crim. App. 2012) (Alcala, J., concurring)).

WAITING FOR THE CANINE

The duration of the stop may last no longer than necessary to effectuate the purpose of the stop. *Rodriguez*, 575 U.S. at 354, 135 S. Ct. at 1614. If an investigatory stop continues indefinitely, at some point it can no longer be justified as an investigative stop. *United States v. Sharpe*, 470 U.S. 675, 685, 105 S. Ct. 1568, 1575, 84 L. Ed. 2d 605 (1985). Case law imposes no rigid time limitation, and common sense and ordinary human experience must govern over rigid criteria. *Id.* Once the computer check is completed, and the officer knows that the driver has a current valid license, no outstanding warrants, and the car is not stolen, the traffic stop investigation is fully resolved. *Lerma v. State*, 543 S.W.3d 184, 191 (Tex. Crim. App. 2018). However, if the officer develops reasonable suspicion during a valid detention, and before the purpose of the original stop ends, that the detainee is engaged in criminal activity, prolonged or continued detention is justified. *See Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd).

Here, after developing reasonable suspicion, Officer Willett called a drug dog to investigate potential criminal drug activity. *See Strauss v. State*, 121 S.W.3d 486, 492 (Tex. App.—Amarillo 2003, pet. ref'd) (recognizing that a sniff test by a drug dog is a minimally intrusive method of investigation to confirm or dispel suspicions of the presence of

narcotics). Based on relevant case law, the thirteen minute forty-one second wait for the drug dog to arrive did not unduly prolong the stop. *See Sharpe*, 470 U.S. at 688, 105 S. Ct. at 1576 (holding that a twenty–minute detention to await a drug dog was not unreasonable); *Strauss*, 121 S.W.3d 486 (holding that a seventy-five-minute detention while waiting for a drug dog was not unreasonable); *Josey v. State*, 981 S.W.2d 831, 840–41 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (holding that a ninety-minute detention from time of stop until the officers searched the vehicle was not unreasonable). Therefore, unlike the trial court, we cannot conclude that the prolonged detention of Spivey for the drug dog to arrive was unreasonable. We further conclude that the trial court abused its discretion by granting Spivey's motion to suppress. And because the trial court suppressed both the contraband and statements made by Spivey based on the conclusion that the prolonged detention was unreasonable, we sustain the State's two issues on appeal.

## Conclusion

Based on the foregoing, we reverse the trial court's order granting Spivey's motion to suppress and remand to the trial court for further proceedings consistent with this opinion.

MATT JOHNSON
Justice

Before Chief Justice Gray,
        Justice Johnson,
        and Justice Smith
(Chief Justice Gray dissenting with a note)*
Reversed and remanded
Opinion delivered and filed October 5, 2022
Do not publish
[CR25]

*(Chief Justice Gray dissents.  A separate opinion will not issue.)

