**Affirmed and Opinion filed May 7, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-22-00794-CR

**HOWARD JOSEPH BURTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1633406**

## OPINION

A jury convicted appellant Howard Joseph Burton of capital murder and punishment was automatically assessed at life without the possibility of parole in the Institutional Division of the Texas Department of Criminal Justice. *See* Tex. Penal Code § 19.03.[1] In five issues appellant challenges the trial court's admission of

---

[1] The trial court pronounced sentence in open court that appellant would be confined for life, which is an illegal sentence for a person found guilty of capital murder. The judgment correctly states the sentence as life without parole.

evidence. Concluding the trial court did not abuse its discretion when it admitted surveillance videos into evidence, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment for murdering the complainant in the course of a robbery or attempted robbery on or about May 11, 2019.

### Motion to Suppress Video Evidence

On October 15, 2019, appellant filed a request for discovery, notice of extraneous bad acts, and *Brady*[2] information. Appellant's requests asked for, among other things, "all discovery evidence including but not limited to offense reports, witness statements, photographs, recordings and any other material items within the State's possession." On December 16, 2019, appellant filed another request for discovery pursuant to article 39.14 of the Code of Criminal Procedure, commonly known as The Michael Morton Act. The State produced copies of three surveillance videos on January 28, 2022. On March 31, 2022, appellant filed a motion to suppress the videos because they were not produced as soon as practicable pursuant to article 39.14.

On October 24, 2022, at trial, before testimony and after jury selection, appellant urged his motion to suppress the surveillance videos that had not been turned over in discovery until January 28, 2022. Appellant's trial counsel asserted that when they learned of the videos, it changed their view of the evidence and impacted their defense. Officer Armand Gemelo recovered the surveillance videos on the day of the offense. The videos consisted of several camera angles from the

---

[2] *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

Chevron service station where the offense occurred and several camera angles from a Conoco station across the street.

Appellant objected to admission of the surveillance videos because they were not disclosed to the defense as soon as practicable. The trial court admitted the videos, finding no willful conduct on the part of the State. The trial court granted appellant a running objection to the surveillance videos.

**The Offense**

On the night of May 10, 2019, from approximately 10:00 p.m. until around 3:00 the next morning appellant wandered in and out of a Chevron gas station in Houston, Texas, and interacted with people gambling at a bank of slot machines at the back of the convenience store.[3] Around 11:30 p.m., the complainant left the Haverstock Hills apartment complex nearby and walked to the same Chevron station. Two other men, one named Jasqueinne Brown, and another known only by his nicknames "Usher" and "UPS" were also at the Chevron station. The men hung out, drinking and socializing with other people in the store, until around 3:00 the next morning. During those hours, the complainant bought drinks and snacks for others, which led appellant, Brown, and "Usher" to realize that the complainant had cash in his backpack.

After 3:00 a.m. appellant and "Usher" went outside the Chevron station and "Usher" gave appellant a handgun, which appellant tucked into his waistband. Appellant then walked around to the back of the gas station and hid inside a concrete barrier, which housed a dumpster. "Usher" went back to the area around the front entrance of the service station store. Brown approached the complainant and told

---

[3] Testimony at trial reflected that the Chevron surveillance video cameras were seven minutes fast. In this opinion, we refer to the times stamped on the Chevron surveillance videos.

him to go outside of the store to talk to "Usher"; the complainant left the store at approximately 3:20 a.m. "Usher" led the complainant to the dumpster enclosure where appellant was hiding. Video evidence shows that appellant reached out from his hiding place and tried to grab the complainant's backpack. Appellant was not able to pull the backpack off of the complainant's back. Appellant then shot the complainant and ran away. The complainant ran past the front door of the service station and collapsed near the front of the Chevron station.

In testifying about the video evidence Detective Demetrius Lewis of the Harris County Sheriff's Department testified that one of the 16 cameras installed at the Chevron station, camera 9, was not working on the night of the offense. Lewis testified that a "big monitor in the middle of the store" broadcast the view from all the working cameras. Lewis testified that an individual who frequented the Chevron station could have learned that camera 9 was not working. Camera 9, which did not record, was facing the open end of the dumpster area where appellant hid before shooting the complainant.

A jury subsequently convicted appellant of capital murder. Appellant was sentenced to confinement for life without the possibility of parole. *See* Tex. Pen. Code § 12.31.

### ISSUES PRESENTED

Appellant raises the following five issues on appeal, which we repeat in their entirety:

1.    Whether the trial court used the correct standard – willfulness – to determine whether the State violated Article 39.14?

2.    What is the correct mens rea to be used in reviewing the State's failure to provide discovery pursuant to Article 39.14?

3.    What is the meaning of "as soon as practicable" for purposes of Article 39.14?

4. Does the prosecutor have a duty to find and produce discovery held by other agencies subject to Article 39.14?

5. What is the proper remedy when the State fails to produce discovery sought under Article 39.14?

In appellant's prayer for relief, he requests reversal and remand for a new trial. We construe appellant's issues as challenging the trial court's denial of his motion to suppress and admission of the surveillance videos at trial. By asking this court to determine the "correct mens rea," the meaning of "as soon as practicable," and the prosecutor's duty to produce discovery held by other agencies, appellant invites us to issue an advisory opinion, which the Texas Constitution prohibits. *See* Tex. Const. art. II, § 1 (separation of powers article prohibits courts from issuing advisory opinions because such is the function of the executive rather than the judicial department). We will address appellant's complaint that the trial court erred in denying his motion to suppress.

## ANALYSIS

### I. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). At the hearing on the motion, the trial court is the sole factfinder and judge of the credibility of the witnesses and of the weight to be given their testimony. *Id*. at 190. We therefore afford almost complete deference to the trial court's determinations of historical facts. *Id*. But, we review de novo the legal significance of the facts found by the trial court. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 35 (Tex. Crim. App. 2017).

We must view the evidence in the light most favorable to the trial court's decision on the motion. *State v. Garcia*, 569 S.W.3d 142, 152–53 (Tex. Crim. App.

5

2018). When, as here, the trial court does not make explicit findings of fact, we presume that the court made implicit findings of fact, if supported by the record. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We sustain the trial court's decision on the motion if it is correct under any applicable theory of law. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *Id.*

## II.    The Michael Morton Act

The Court of Criminal Appeals recognized that the "wrongful conviction of Michael Morton provided a significant spark the Legislature needed to completely change criminal discovery in Texas." *Watkins v. State*, 619 S.W.3d 265, 274–75 (Tex. Crim. App. 2021). The Michael Morton Act (the Act) broadened criminal discovery for defendants in Texas, making disclosure the rule and non-disclosure the exception. *Id.* at 277. Under article 39.14 of the Act, the State is obligated "as soon as practicable after receiving a timely request from the defendant" to "produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant" of the following items:

> [A]ny offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

Tex. Code Crim. Proc. art. 39.14(a).

To satisfy this obligation, "[t]he state may provide to the defendant electronic

6

duplicates of any documents or other information described by this article." *Id*. "[B]efore trial, each party shall acknowledge in writing or on the record in open court the disclosure, receipt, and list of all documents, items, and information provided to the defendant under this article." *Id*. art. 39.14(j).

### III. Appellant failed to show prejudice in the State's delayed disclosure of the video evidence.

The trial court held a hearing on appellant's motion to suppress before hearing testimony. It was undisputed that the surveillance videos recorded activity beginning the night before the complainant was killed and going through the offense and its aftermath. Some of the videos began at 10:00 p.m. on May 10, 2019, and continued through 5:00 a.m. on May 11, 2019. Appellant robbed and killed the complainant at approximately 3:23 a.m. on May 11, 2019. Appellant timely requested discovery of the videos pursuant to article 39.14 of the Code of Criminal Procedure. It was also undisputed that the State produced the videos to the defense on January 28, 2022. On February 9, 2022, appellant agreed to a continuance of trial from February 14, 2022 to March 28, 2022. The March 2022 trial date was postponed again to July 2022. Trial began nine months after disclosure of the video evidence on October 24, 2022.

At the hearing on appellant's motion to suppress appellant argued that the surveillance videos were "crucial" to the State's case because they showed the offense and appellant's participation in it. Appellant's counsel further asserted that when the videos were disclosed in January, it "changed our view of what the nature of the evidence was against our client and it completely impacted . . . how we planned to defend him and our advice to him[.]" Counsel explained that until January 2022, they understood the evidence against appellant was "exclusively based" on a co-defendant's testimony. Before receiving the surveillance videos, counsel advised

7

appellant not to engage in plea bargaining with the State because, without the video evidence, counsel believed the evidence against appellant was insufficient to sustain a conviction. The record is silent as to any efforts at plea bargaining between the time they received the videos and trial.

At the conclusion of the hearing on the motion to suppress, the trial court found no "wilful [sic] conduct" of the prosecutor and admitted the video evidence at trial.

On appeal, appellant asserts the court erred in admitting the videos because: (1) trial courts should not be required to find willful intent of the prosecutor before excluding evidence under the Act; (2) this court should define "as soon as practicable" for purposes of the Act to include a "reasonable period" for compliance; (3) prosecutors should be required to inquire about the existence of evidence subject to disclosure; (4) this court should give guidance to trial courts in the exercise of their discretion in fashioning remedies under the Act; and (5) this court should "fill gaps left by the Legislature" in the Act.

Historically, courts have held "evidence willfully withheld from disclosure under a discovery order should be excluded from evidence." *Francis v. State*, 428 S.W.3d 850, 854–55 (Tex. Crim. App. 2014) (quoting *Hollowell v. State*, 571 S.W.2d 179, 180 (Tex. Crim. App. 1978)). "Extreme negligence or even recklessness on the prosecutor's part in failing to comply with a discovery order will not, standing alone, justify the sanction of excluding relevant evidence." *Id*. at 855 (citing *State v. LaRue*, 152 S.W.3d 95, 97 (Tex. Crim. App. 2004)). Exclusion of evidence in this context constitutes a court-fashioned sanction for prosecutorial misconduct that hinges on the prosecutor's intent. *Oprean v. State*, 201 S.W.3d 724, 726–27 (Tex. Crim. App. 2006). A continuance can be an appropriate remedy for failure to timely disclose evidence that is within the trial court's discretion. *State v.*

8

*Heath*, 642 S.W.3d 591, 598 (Tex. App.—Waco 2022, pet. granted).

In *Heath*, the Tenth Court of Appeals noted the historical significance of the extreme remedy of exclusion of evidence, but determined that the "old concept of 'willful violations' and 'bad faith'" no longer applied to the trial court's decision to exclude evidence under the Act. *Id.* at 598. The Tenth Court held that, in light of the requirement under the Act that discovery be produced "as soon as practicable," a defendant need not show the State's delay in producing evidence was willful or done in bad faith to justify the trial court's exclusion of the evidence. *Id.* at 597. In *Heath*, the State appealed an order granting Heath's motion to suppress a 9-1-1 recording that was not produced by the State "as soon as practicable." *Id.* at 593. In that case, the prosecutor learned of the 9-1-1 recording six days before trial and produced it to the defendant the same day. *Id.* at 594. Heath filed a motion to suppress the 9-1-1 recording, which the trial court granted. *Id.* Heath sought exclusion of the recording solely because it was not produced "as soon as practicable" pursuant to the Act. *Id.* at 594–95. The parties did not dispute that the recording was in the possession of the State or that it was material. *Id.* at 595. In excluding the evidence, the trial court made specific findings that the prosecutor had a duty to ascertain what evidence was held by the police and was under a "statutory duty" to disclose the evidence to the defense "as soon as practicable." *Id.* at 595–96. The trial court made no findings as to the intent of the prosecutor. *Id.* at 596. On appeal, the State argued that the trial court abused its discretion by granting the motion to suppress because the prosecutor's failure to produce the evidence was not a willful violation of the Act. *Id.*

The *Heath* court recognized that "[h]istorically, the exclusion of evidence is at its essence a court-fashioned sanction for prosecutorial misconduct." *Id.* (citing *Francis*, 428 S.W.3d at 855). The court further noted that the Legislature made a

substantive change to the process of disclosure of requested items in that, before enactment of the Act, a trial court order was required for discovery and that order would control the timing of disclosure. *Heath*, 642 S.W.3d at 597. After passage of the Act, the Act's requirement that discovery be disclosed "as soon as practicable" supplanted the requirement of a trial court order. *Id*. The Tenth Court held, "a failure to at least inquire about the existence of discoverable items in response to a proper request in a timely manner is all the evidence necessary to show that the failure to timely produce the item in discovery was due to what was previously characterized as a 'willful violation' or 'bad faith.'" *Id*. Further, noting "[a] continuance could have been an appropriate remedy within the trial court's discretion," since the trial court granted Heath's motion and excluded the evidence, the trial court did not abuse its discretion by failing to make a finding of willfulness. *Id*. at 598.

Here, both appellant and the State argue that the court in *Heath* fashioned a "strict liability" extreme sanction of exclusion of evidence even if nothing in the record shows the State willfully withheld the evidence.[4] We are not bound by the Tenth Court of Appeals' decision in *Heath*. *See Cannon v. State*, 691 S.W.2d 664, 679–80 (Tex. Crim. App. 1985) ("It is rudimentary that courts are not bound by decision of other courts of equal jurisdiction.").

Even if we were to adopt the Tenth Court's holding, the decision in *Heath* does not impact whether the trial court abused its discretion in this case because even willfully withheld discovery is admissible if the defendant fails to show how he was prejudiced by the late disclosure. *See Jackson v. State*, 17 S.W.3d 664, 673 (Tex. Crim. App. 2000) (no prejudice shown where the State revealed the requested

---

[4] There is room to discuss whether the Tenth Court's holding fashioned such a strict-liability rule, especially considering its notation that a continuance could have been an appropriate remedy.

information in time for the defendant to use it on cross-examination of the State's witness). To the extent *Heath* holds that evidence not timely produced in discovery must be excluded despite a showing of prejudice to the defendant, we decline to follow that holding as it is contrary to high court authority and this court's authority. *See Francis*, 428 S.W.3d at 859; *Hernandez v. State*, 610 S.W.3d 106, 115 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (defendant must show prejudice to exclude evidence not promptly turned over in discovery under the Michael Morton Act); *see also Watkins*, 619 S.W.3d at 291 (remanding to court of appeals for harm analysis).

It is undisputed that the State did not turn over the surveillance videos "as soon as practicable." Even if appellant was not required to show willful conduct on the part of the State, appellant "must still carry his burden of proving that he was prejudiced." *Hernandez*, 610 S.W.3d at 115. In *Francis*, the Court of Criminal Appeals observed that exclusion of evidence was not the only remedy available when the State's conduct was of a less culpable nature than willfulness. 428 S.W.3d at 859. In addressing exclusion of evidence that was not produced timely in discovery, the court noted that the due process rights of the defendant were not violated despite the State's tardy production of evidence in that case. *Id*. The court held that the trial court had granted a continuance to allow the defendant to review the evidence and the defendant was not disadvantaged in a material way by his belated receipt of the evidence or even notification of the full significance of the evidence. *Id*.

Here, appellant received the service station videos nine months before trial, on January 28, 2022. At that time, trial was scheduled on February 14, 2022. On February 9, 2022, appellant filed an agreed motion for continuance in which appellant and the State requested a new trial date of March 28, 2022. On March 21,

2022, appellant filed a motion to suppress the surveillance videos on the ground they were not produced as soon as practicable. According to the court's docket sheet appellant's counsel and the State sought a further continuance on July 11, 2022 and the case was reset to July 18, 2022. The docket sheet further reflects the case was reset by agreement again on July 18, 2022. Trial commenced on October 24, 2022. In the trial court appellant argued that before the late disclosure of the videos he was confident the State lacked sufficient evidence to convict him, and he was uninterested in engaging in plea negotiations. The record is silent about any efforts toward plea negotiations after disclosure of the service station videos.

Appellant has not shown he was prejudiced pretrial, nor does the evidence support such a contention. The record reflects appellant and his counsel agreed to continue trial at least three times giving them ample time to become familiar with the content of the videos. During opening statement appellant's counsel argued the videos did not definitively show that appellant committed the offense. When cross-examining Detective Lewis, appellant's counsel referred to "camera 15" as the angle that showed the offense, evidencing familiarity with the multiple camera angles that made up State's Exhibit 100. Counsel also challenged the State's theory that Brown, Usher, and appellant coordinated the attack on the complainant because none of the surveillance videos showed all three men together. Counsel thoroughly cross-examined Lewis on whether the video actually showed appellant shooting the complainant.

After considering appellant's issues, we have no basis for questioning the trial court's decision because appellant has not pointed to any evidence showing that the untimely disclosure resulted in prejudice. *See Smith v. State*, 779 S.W.2d 417, 431 (Tex. Crim. App.1989) (no harm shown when the State revealed the requested information in time for the defendant to use it on cross-examination of the State's

witness). Because appellant failed to establish that he was prejudiced by the untimely disclosure of the surveillance videos, we conclude the trial court did not err in denying appellant's motion to suppress. *See State v. Copeland*, 501 S.W.3d 610, 612–13 (Tex. Crim. App. 2016) ("When reviewing a trial court's ruling on a motion to suppress, appellate courts uphold the ruling of the court if it is correct under any 'theory of law applicable to the case,' even if the trial court did not rely on that theory in making its ruling.").

Appellant further requests that we determine the correct "mens rea" to be used in reviewing disclosure under the Act, define the meaning of "as soon as practicable," determine whether a prosecutor owes a duty to find and produce discovery held by other agencies, and determine the proper remedy for a violation of the Act. We need not address those issues because they are not necessary to final disposition of this appeal. *See* Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal."). Because appellant has not established he was prejudiced by the untimely disclosure of the evidence, we need not address whether the remedy of exclusion of evidence requires a finding of willfulness. The trial court did not abuse its discretion in admitting the surveillance videos into evidence. We overrule appellant's issues on appeal.

CONCLUSION

We affirm the judgment of conviction.


/s/     Jerry Zimmerer
        Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.
Publish — Tex. R. App. P. 47.2(b).